**Gale Kenneth NIPP, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**Eldridge H. BISHOP, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**Nos. 8–69, 9–69.**

United States Court of Appeals
Tenth Circuit.

Dec. 2, 1969.

Rehearing Denied in No. 9–69
Jan. 6, 1970.

Certiorari Denied March 30, 1970.
See 90 S.Ct. 1235.

Mickey D. Wilson, Tulsa, Okl., for appellant Nipp.

Elmore A. Page, Tulsa, Okl. (Thomas G. Hanlon, Tulsa, Okl., on the brief), for appellant Bishop.

Lawrence A. McSoud, U. S. Atty. (Robert P. Santee, Asst. U. S. Atty., on the brief), for appellee.

Before HILL and SETH, Circuit Judges, and THEIS, District Judge.

SETH, Circuit Judge.

The appellants, together with a third party, Reecil Wayne Gravitt, were jointly indicted on three counts. The first count charged only the two appellants with aiding and abetting one Dors Lee Hill in the possession and attempt to sell counterfeit federal reserve notes. Count two of the indictment also charged the two appellants with aiding and abetting the same person in delivering counterfeit federal reserve notes with the in-

tent that they be passed. The third count of the indictment covered the appellants, the third party, and others under a conspiracy charge to pass, sell, or attempt to sell, and keep in their possession, and conceal counterfeit federal reserve notes.

A jury trial was held, and the appellants together with the defendant Gravitt were found guilty as charged. The appellants thereupon took separate appeals which have been consolidated for hearing and disposition.

The appellants urge that the trial court was in error in that it limited cross-examination by the appellants of the principal witness for the Government. Appellants also assert that they should have been provided in advance of the trial the names of the witnesses to be used by the Government, and also a transcript of the grand jury proceedings. Other asserted errors relate to the instructions and the sufficiency of the evidence. Some detailed recitation of the facts is necessary in view of the points raised on appeal.

The witness, Dors Lee Hill, and other witnesses for the Government testified as to various meetings and transactions among the parties charged. This testimony shows that the witness Hill met with defendant Gravitt and appellant Nipp in January 1967, and a discussion took place concerning a small number of counterfeit $100 bills. These bills were then in the possession of appellant Nipp and he thereupon sold ten of such notes to witness Hill for $300.00. The witness told appellant Nipp at this time that he could dispose of the entire number of bills that were available to Nipp in the face amount of $220,000.00. Shortly after this meeting, the witness Hill and defendant Gravitt met again. Thereafter the witness Hill went to Chicago to arrange for the sale of the counterfeit bills and there met with the prospective buyers and made arrangements for the sale to take place in Clarksville, Tennessee. About January 11th or 12th, the witness Hill met with appellant Nipp and defendant Gravitt in Tulsa, Oklahoma. The witness testified that he saw appellant Bishop in the car outside the motel at that time. The witness, together with the appellants, traveled to the home of the witness in Sapulpa preparatory to the trip to Clarksville, Tennessee.

The witness Hill and the appellants were to travel to Clarksville, Tennessee, in an airplane apparently owned by the appellant Bishop and piloted by him. The witness Hill testified that en route to the airport, the three of them discussed the amount of the counterfeit money they were then taking to Clarksville. The three started out for Clarksville in the plane, but it was necessary for them to land at Cairo, Illinois. Appellant Bishop there rented a car in his own name and the three drove to Clarksville and registered at the motel. This witness testified that after arrival at the motel, the three of them, Nipp, Bishop, and Hill, counted the counterfeit money, set aside about $50,000.00 to be shown to the prospective purchasers by the witness Hill. This was done. One of the purchasers did not appear and the parties waited for him into the next day. However, appellant Bishop returned the rental car to Cairo, picked up the plane, and flew to Clarksville. Soon thereafter the appellants left Clarksville by plane, leaving the witness Hill there to contact the missing purchaser. Thereafter the prospective purchaser contacted the witness Hill in Tulsa and a meeting was arranged to be held at the Tulsa airport for the sale of the counterfeit money. The witness called and arranged to have appellant Nipp provide him with the bills for the purchase. Prior to the purchase, the parties, Hill, Bishop, and Nipp, met and the counterfeit bills were turned over to the witness for delivery to the purchaser at the airport. The plan was that the witness would proceed to the airport with the bills and he would be followed in another car by the appellants. An initial contact was made at the airport between Hill and the prospective purchaser. The witness Hill returned to the parking lot and there dis-

cussed the matter further with the appellants. The witness then returned in his car to a taxi parking area in front of the airport where the exchange was to be made. When the witness sought to make the sale, he was thereupon arrested. The appellants were not then arrested as they were waiting in the parking lot for the return of Hill.

■ The first asserted error advanced by appellants relates to the transcript of the grand jury proceedings. As indicated above, they urge that they were entitled to a copy of the transcript of such proceedings. The record shows that the testimony given before the grand jury which handed down the indictment was not recorded. There is no requirement that the proceedings of a grand jury be recorded and no error may be predicated upon the fact that a transcript was not provided when no transcript was taken. Wyatt v. United States, 388 F.2d 395 (10th Cir.); Thompson v. United States, 381 F.2d 664 (10th Cir.); McCaffrey v. United States, 372 F.2d 482 (10th Cir.).

■ The appellants also assert that they should have been provided prior to trial with the names of the witnesses who were to appear for the Government. The trial judge upon a motion declined to require the Government to provide the names of the witnesses. They acknowledge that there is no statutory authority for their position, and there are no decisions which require the names to be furnished in non-capital cases. The appellants cite cases wherein it is held that the courts have inherent power to compel discovery and that this power includes the disclosure of the names of the Government witnesses. We have considered the issue and related issues in several recent cases. These include Edmondson v. United States, 402 F.2d 809 (10th Cir.); United States v. Gleeson, 411 F.2d 1091 (10th Cir.), and most recently, United States v. Eagleston, 417 F.2d 11 (10th Cir.). See also 44 F.R.D. 527. In these cases, we have held that it is not error for the trial court to refuse to order the production of the names of the witnesses to appear for the Government in non-capital cases. The inherent authority issue has not been separately considered and is not so considered here.

■ As to the asserted limitation on cross-examination by appellants of the witness Hill, the record shows that this witness, as indicated in the outline of the facts, was the active party in the arrangements for the sale and in its attempted culmination. He appeared as a witness for the Government, and upon cross-examination he was asked about charges that had been brought against him. He testified that he had been found guilty of possession of counterfeit money and the sale thereof and had received two concurrent sentences, the longest of which would run fifteen years. He also had been charged with the possession of stolen money orders and under the Dyer Act. He entered a plea of guilty to these charges and received sentences to run concurrently with the counterfeiting sentences. All of his sentences were however thereupon reduced to five years, four months, and four days by the district judge who was also the trial judge during the course of the trial here appealed from. The record shows that the reduction of the sentences of the witness Hill took place before the trial of the appellants herein. This witness was asked on cross-examination by appellants about his statements given to the Government preparatory to the trial in relation to the reduction of his sentence. The record shows that this was fully developed.[1] The attorney for the appel-

---

1. "Q. Yes, sir. And after you made those statements your sentence was cut to five years, wasn't it?
"A. Yes, it was cut.

"Q. Yes, sir. And those statements involved these defendants, did they not?
"A. That statement?
"Q. Yes.

lants was permitted to cross-examine on the point. The relationship of the statements and the sentencing of the witness was described for the jury. There was nothing further relative to the matter that could properly have been the subject of the cross-examination, and we find that the limitation placed by the trial court was not improper.

The same matter was later brought up during further cross-examination of the same witness. Counsel for the appellants inquired again into the reduction of the sentence. The court then advised counsel that this had already been developed before the jury and the court again told the attorney the reason why the sentence had been reduced.[2] Again the matter was fully explained for the benefit of the jury, and if the action of the trial court constituted a limitation on further questioning, it was entirely proper as the position and interest of the witness were clearly before the jury at that time.

As an issue related to the next preceding one, the appellants urge that they were likewise limited in their presentation to the jury of this same subject by directions given by the trial judge. The record shows that counsel for the defendants were advised prior to the closing arguments that their argument on this point would be restricted in that they could not argue that the testimony of the witness Hill was given in exchange for the reduction of his sentence.[3]

---

"A. Yes.

"Q. In other words, you sold them out for ten years, didn't you?

"MR. RITCHIE: If the Court please, I think that's a little bit—

"THE COURT. The Court overrules the objection.

"By Mr. Page.

"Q. In any event, you did have an interest in your statement, didn't you?

"A. Yes.

"Q. Yes, sir. All right. That was to try to save you some time, that's why you made that statement?

"THE COURT. Well, I think that brings the Court into this play. Mr. Page. To the jury, I want to say that the sentence was reduced, not for anything that he ever said or did, but it was reduced at the time he entered a plea of guilt [sic] to the Dyer Act and to the postal money orders, more because of his naval record, as I remember it, and that has been almost a year ago, and because of his health.

"You may proceed."

2. "Q. And then after you were convicted in this court and given fifteen years, thereafter it was reduced to five years, and all of these crimes, five years, four months, three days?

"THE COURT. Hasn't that all been before the jury?

"MR. BRIGGS. Yes, your Honor, it has.

"THE COURT. What is the point? The jury understands that.

"MR. BRIGGS. I want to ask him when it was that he decided, your Honor, that he could trade somebody else's liberty for his own.

"THE COURT. Now wait a minute. Now wait a minute. Let's keep the record straight. He hasn't traded anybody's liberty for anybody. The Court made that on the Court's own motion.

"MR. BRIGGS. I understand that, your Honor.

"THE COURT. I don't want any more of that kind of talk, and I am not going to have it. Your understand?

"MR. BRIGGS. I understand, your Honor.

"THE COURT. I reduced this sentence and I told you why, and I did it in open court.

"MR. BRIGGS. Yes, your Honor.

"THE COURT. And I haven't talked to anyone about this lawsuit; and don't you say anything like that any more.

"MR. BRIGGS. No, your Honor, and I don't—please, I don't want the Court to misunderstand. I don't think—

"THE COURT. (Interposing) I don't want to be misunderstood either.

"MR. BRIGGS. I do not think the Court was informed at the time when the sentence was reduced with reference to these other matters.

"THE COURT. I know why I reduced it.

"MR. BRIGGS. Yes, your Honor.

"THE COURT. And I reduced it in my own heart on the own circumstances and the own record.

"MR. BRIGGS. I understand, your Honor.

"THE COURT. Not anything that he said to anybody at any time at any place."

3. "THE COURT. Well, if I recall right, this was a conference between attorneys and the Court with reference to what

This direction by the trial judge did not prohibit any mention of the interest of the witness Hill which had already been demonstrated by cross-examination, but it only prohibited what would have been an incorrect reference that the reduction had been given as a trade. The trial judge had told the jury and counsel the reasons for the reduction in the sentence of the witness Hill, and the time when the sentence was reduced. Any comment or reference to a trade would have been incorrect, and the trial court was proper in instructing the counsel not to so argue. They certainly would have been free to again point out to the jury the relationship of the witness to the parties, and the fact that he had already been sentenced and the original sentence reduced, and that he was then in prison. We find no improper or undue limitation upon the closing arguments of counsel.

Appellants urge that there is insufficient evidence to sustain the conviction of the appellants. We have examined the record and find that substantial evidence was produced to support the conviction. The proper rule was long ago set out by this court in Wilder v. United States, 100 F.2d 177 (10th Cir.). See also Mason v. United States, 408 F.2d 903 (10th Cir.); McGee v. United States, 402 F.2d 434 (10th Cir.). In this connection, it should be borne in mind that the appellants were charged in the initial counts with aiding and abetting. The implication of the appellant Bishop is perhaps less extensive than that of the appellant Nipp. However, testimony of the witnesses placed Bishop at the several places and with the other parties at the critical times and the testimony of the witness Hill directly implicates Bishop as a participant. It is apparent that the jury believed the testimony of the witness Hill in this respect and on other points.

■ We also find no error in the instructions. Clearly the instructions did not permit the jury to find the appellants guilty merely on the basis of association with the conspirators. Butler v. United States, 197 F.2d 561 (10th Cir.). See also Jones v. United States, 365 F.2d 87 (10th Cir.). The law relative to conspiracy was plainly set out in the instructions, and a further instruction was given directly upon the matter of bare association with the participants. This instructed the jury that mere similarity of conduct among various persons and the fact that they may have been associated with each other and may have been together and discussed common interests. did not necessarily establish proof of the existence of a conspiracy. This instruction directly met the association issue raised by the appellants.

■ The appellant Nipp, who did not testify, raises an additional issue. This concerns the admission of an exhibit which was a copy of a report made by a Secret Service agent. The report related to the investigation which had been proceeding for some time and to the activity of the defendants. The admission of the report was duly objected to, but it was admitted. This report in part states that appellant Nip had been under investigation, and he urges that this reference constituted evidence as to his character when none had been introduced by him, and therefore the admission of the exhibit was error. The portion of the report of the investigator which indicated that the appellant was suspect did not for the purposes of the rule constitute a reflection on the character of the appellant. It was apparent throughout the trial that the matter had been under investigation for an ex-

---

should be the instructions to the jury, and if I recall, I did say to the attorneys that I did not want them to say the reduction in sentence the Court had given to Mr. Hill was in trade for his testimony, that the reduction given Mr. Hill was on the Court's own motion.

"MR. PAGE. That's right.
"THE COURT. And for you to say that he came testifying in the light of a trade would be wrong, that if you did I would have to call you down.
"MR. PAGE. That's right."

tended period of time and the participants were known to the authorities. The exhibit does not refer in any way to the reputation of the appellant for truth and veracity, and we find no issue as to reputation raised thereby.

We find no error, and the case is therefore affirmed.