UNITED STATES of America, Plaintiff-Appellee,

v.

Olin AUSTIN, Charles Lynch Paterson, Larry Lee Bates, Defendants-Appellants.

Nos. 85–1272, 85–1247 and 85–1271.

United States Court of Appeals, Tenth Circuit.

March 14, 1986.

Shannon Robinson, Albuquerque, N.M., for defendant-appellant Larry Lee Bates.

James L. Brandenburg, Albuquerque, N.M., for defendant-appellant Olin Austin.

David J. Richman (H. Thomas Coghill, with him on brief), of Coghill & Goodspeed, P.C., Denver, Colo., for defendant-appellant Charles Lynch Paterson.

David N. Williams, Asst. U.S. Atty. (William L. Lutz, U.S. Atty., with him on brief), Albuquerque, N.M., for plaintiff-appellee.

Before SEYMOUR, SETH and ANDERSON, Circuit Judges.

SEYMOUR, Circuit Judge.

These companion appeals arise out of an ill-fated plan to bring marijuana from Colombia into the United States. At the trial of these defendants, the Government contended that they were members of a conspiracy to distribute marijuana pursuant to which two plane loads of contraband were flown to New Mexico. The first load arrived in February 1983, and was successfully distributed. The second load, which arrived in March 1983, was tracked by United States Customs personnel. Law enforcement officers arrived at the scene after the plane had landed and arrested those involved in unloading the marijuana. These ten off-loaders were tried and convicted in separate proceedings. Complete details of the marijuana scheme are set out in the opinion affirming their convictions. *See United States v. Espinosa,* 771 F.2d 1382 (10th Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 579, 88 L.Ed.2d 561 (1985).

In the instant case, the Government contended that Olin Austin participated in the conspiracy and the distribution by selling his ranch in New Mexico to other conspirators for use as a landing strip. The Government contended that Larry Bates, a flight engineer, conspired and distributed marijuana by his activity as a member of the flight crew which flew the empty plane out of the ranch after the successful February operation, and which flew the loaded plane to the ranch in March. The Government contended that Charles Paterson, who owned an air cargo transport company operating out of Miami, conspired and distributed marijuana by supplying the plane for the March operation. After a jury trial, all defendants were found guilty of conspiracy to distribute marijuana. Austin and Paterson were acquitted of substantive distribution charges. Bates was acquitted of the substantive count arising out of the February operation, but convicted of the substantive count based on the March operation.

I.

### THE AUSTIN APPEAL

Austin contends that the evidence is insufficient to support his conviction.

"The essence of the crime of conspiracy is an agreement to commit an unlawful

act.... Although the agreement may be inferred from the facts and circumstances of the case, and 'need not take any particular form, there must at some point be a meeting of the minds in the common design, purpose, or objects of the conspiracy.' *United States v. Butler,* 494 F.2d 1246, 1249 (10th Cir.1974). *To be guilty of conspiracy, a defendant must possess 'at least the degree of criminal intent necessary for the substantive offense itself.' Ingram v. United States,* 360 U.S. 672, 678 [79 S.Ct. 1314, 1319, 3 L.Ed.2d 1503 (1959) ].... For instance, since substantive offenses relating to illegal importation of drugs require knowledge that the drugs were illegally imported, so too does the offense of conspiring to commit those substantive offenses."

*United States v. Dumas,* 688 F.2d 84, 86 (10th Cir.1982) (emphasis added) (citations omitted). A defendant's mere association with conspirators is not enough to support a conspiracy conviction. *E.g., United States v. Soto,* 716 F.2d 989, 991–92 (2d Cir.1983); *United States v. Ward,* 703 F.2d 1058, 1062 (8th Cir.1983); *United States v. Fitzharris,* 633 F.2d 416, 423 (5th Cir.1980), *cert. denied,* 451 U.S. 988, 101 S.Ct. 2325, 68 L.Ed.2d 847 (1981); *United States v. Melchor-Lopez,* 627 F.2d 886, 891 (9th Cir. 1980). As one court has stated, "the government cannot prove a conspiracy by presenting evidence that only places the defendant in 'a climate of activity that reeks of something foul.' " *United States v. Jackson,* 700 F.2d 181, 185 (5th Cir.) (quoting *United States v. Galvan,* 693 F.2d 417, 419 (5th Cir.1982)), *cert. denied,* 464 U.S. 842, 104 S.Ct. 139, 78 L.Ed.2d 132 (1983). "The defendant lacks the requisite criminal intent if he does not know the conspiracy's objective," and this knowledge must be shown by "clear, unequivocal evidence." *Dumas,* 688 F.2d at 86 (citing *Direct Sales Co. v. United States,* 319 U.S. 703, 711, 63 S.Ct. 1265, 1269, 87 L.Ed. 1674 (1943)).

In this case the Government charged Austin with conspiring to distribute in excess of 1,000 pounds of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846 (1982). Thus the Government was required to show, by clear and unequivocal evidence, Austin's knowledge that the object of the conspiracy was the distribution of marijuana, and his agreement to cooperate in achieving that object. *See Direct Sales,* 319 U.S. at 711, 713, 63 S.Ct. at 1269, 1270. In assessing the sufficiency of the evidence, we must view it in the light most favorable to the Government to determine whether any rational trier of fact could find Austin guilty beyond a reasonable doubt. *See, e.g., Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Dumas,* 688 F.2d at 85. This record falls far short of containing evidence sufficient to meet this standard.

Austin lived approximately forty miles from the ranch, which had been listed for sale for some time. The evidence is undisputed that Austin had no connection with the buyers of the ranch until they approached him about purchasing it. Government witnesses testified that the buyers were looking for an isolated piece of property flat enough for landing the aircraft on which they planned to bring marijuana to the states from Colombia. The primary person with whom Austin negotiated the sale of the ranch, Armando Vallina, used the alias Ray Valdez and did not tell Austin the real purpose for which he wanted the property, telling him instead that several Honduran ranchers were seeking a place to bring their families in the event their country's government should collapse.

The ranch had been listed at a price of $125 per acre. Austin initially asked Vallina for $1,600,000, or about $150 an acre, and they settled on a price of $1,500,000. The buyers also purchased the cattle for an additional sum. Austin received a partial down payment in cash, which he took to the bank and used to obtain a cashier's check in the amount of a mortgage payment due on the ranch. While at the bank, he filled out a currency transaction report required by the federal government when a cash transaction of this size occurs. Austin also

reported the proceeds from the transaction on his income tax returns.

The buyers hired Austin's son, Marlin, to stay on and manage the ranch after they took possession of the land. Before the February operation, the buyers sent Marlin to spend the night in town. Upon his return, Marlin discovered airplane tracks in a field and reported the tracks to his father, who took pictures of them. Austin asked Vallina in early March about the tracks and said if he saw anything else that looked suspicious he was going to the police. Vallina told him to go ahead.

Prior to the March operation, Vallina made an additional $40,000 payment to Austin. Testimony from Faustino Larrazaleta, the Government's main witness and a conspirator, was unequivocal that this was an additional payment toward purchase of the property. After the authorities intercepted the March marijuana load, Austin told them about his previous suspicions and gave them the photographs.

Although Austin candidly testified that by March he had begun to suspect something illegal was going on, mere suspicion is not enough. *See Dumas,* 688 F.2d at 86; *see also Direct Sales,* 319 U.S. at 711–13, 63 S.Ct. at 1269–70. In *Dumas,* we reversed the defendant's conviction for conspiring to obtain possession of Dilaudid by misrepresentation or subterfuge. The evidence was clear that Dumas intended to obtain Dilaudid from his alleged coconspirator, a doctor, but there was no evidence that Dumas knew the doctor was going to obtain the drug using false prescriptions, the alleged misrepresentation. Here, Austin was charged with conspiring to possess marijuana with the intent to distribute it. This record contains no evidence from which a fact finder could infer that Austin knew the focus of the conspiracy was the distribution of marijuana, rather than the distribution of other contraband, or the aiding of illegal aliens, or other equally speculative illegal conduct, or even clandestine activity that did not violate the law. Accordingly, we conclude that the evidence is insufficient to support Austin's conviction for conspiracy to distribute marijuana. At the most, "[t]he evidence against this defendant creates mere suspicion or insinuation of guilt of conspiracy, which is not enough to sustain such a conviction." *United States v. McMahon,* 562 F.2d 1192, 1197 (10th Cir.1977). We reverse and remand with instructions to direct a judgment of acquittal. *See Burks v. United States,* 437 U.S. 1, 18, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978).

Although we reverse on the above ground, we feel compelled to comment on the district court's failure to follow the "preferred order of proof" before permitting the introduction of coconspirator hearsay. *See United States v. Petersen,* 611 F.2d 1313, 1330–31 (10th Cir.1979), *cert. denied,* 447 U.S. 905, 100 S.Ct. 2985, 64 L.Ed.2d 854 (1980).

> "In *United States v. Petersen,* we reiterated our ruling in *United States v. Andrews* [585 F.2d 961 (10th Cir.1978) ]:
>
> 'Our *Andrews* holding was simply that a district court judge, under Rule 104 of the Federal Rules of Evidence, must determine, prior to admission of a hearsay statement, as a factual matter, that the Government has shown by independent evidence that it is more likely than not that (1) the conspiracy existed; (2) the declarant and the defendant against whom the conspirator's statement is offered were members of the conspiracy; and (3) the statement was made during the course of and in furtherance of the objects of the conspiracy.'
>
> "*United States v. Petersen,* 611 F.2d at 1330. As a further guide to trial judges, we recommended the procedure outlined in *United States v. James,* 590 F.2d 575, 581–82 (5th Cir.1979). In *Petersen,* we stated that the trial court's determination regarding the admissibility of hearsay co-conspirators' statements should normally be made during the government's case in chief, and that a substantial independent evidence rule must be applied. We also recommended that, whenever possible, the prosecution first introduce

its independent proof of the conspiracy and the defendant's connection thereto before admitting hearsay declarations of co-conspirators. *Id.* at 1330."

*United States v. DuFriend,* 691 F.2d 948, 950–51 (10th Cir.1982), *cert. denied,* 459 U.S. 1173, 103 S.Ct. 820, 4 L.Ed.2d 1017 (1983).

Some of the trial judges in this circuit require the Government to present the required independent evidence in a pretrial proceeding, which is particularly helpful to this court in assessing whether the standard was met. Other judges require the Government to prove the existence of the conspiracy and each defendant's connection to it at the actual trial *before* any coconspirator hearsay is admitted, a more cumbersome procedure. In *United States v. Stipe,* 653 F.2d 446 (10th Cir.1981), we commented on the problems involved where the preferred order of proof is not followed:

> "The government seeks to modify [*Petersen, James,* and *Andrews* ]; it requests a less formal procedure, one which allows the hearsay to be received on a conditional basis subject to 'connecting it up.' This is not new. It has been practiced by prosecutors for, lo, these many years. During all of this time courts have condemned it. By the time the connected up stage arrives, the evidence has blended so that there is no distinction between hearsay and non-hearsay."

*Id.* at 449.

In this case, the trial judge recognized the preference in this circuit for the described order of proof but decided very early in the trial not to follow it "because of the complications that are involved, the number of parties who we have, and the various places that we have...." Rec., vol. II, at 118. In fairness to the judge, we have previously affirmed cases where the trial judge found it "was not reasonably practical" to follow the preferred order of proof because of "the intricate, interwoven web of contacts, meetings, disguises and unusual 'business' dealings and practices." *United States v. Pilling,* 721 F.2d 286, 295 (10th Cir.1983). We have elsewhere said

that the "preferred order of proof should be adhered to absent 'some substantial reason.'" *United States v. Behrens,* 689 F.2d 154, 158 (10th Cir.) (*quoting United States v. Calabrese,* 645 F.2d 1379, 1387 (10th Cir.1981)), *cert. denied,* 459 U.S. 1088, 103 S.Ct. 573, 74 L.Ed.2d 934 (1982).

This case graphically illustrates the need to follow the preferred order so as to focus on the quantum of independent evidence against each alleged defendant at a point in the trial early enough to avoid the result that occurred here. Austin was forced to endure an entire trial, was convicted of conspiracy on insufficient evidence, and was incarcerated for eight months pending this appeal. None of the coconspirators who made the real estate transaction with Austin testified at trial; the Government's evidence as to the transaction was presented entirely through the hearsay testimony of Larrazaleta, who had never met Austin. The Government could have presented early in the case the few witnesses who testified regarding Austin, including the government agents to whom Austin spoke after the March operation was discovered, the banker with whom he deposited the cash down payment, and the local man who directed the buyers of the property to Austin because he knew Austin wanted to sell his ranch. Under this procedure, we believe the trial judge would have recognized that the evidence offered to establish Austin's complicity in the conspiracy was insufficient.

■ We thus take this opportunity to reaffirm that it is far preferable from the standpoint of fair trial procedures that the Government be required to present substantial independent evidence of the conspiracy and each defendant's connection with it before being permitted to introduce coconspirator hearsay. Failure to follow the preferred order should be the rare exception rather than the rule.

## II.

### THE BATES AND PATERSON APPEALS

■ Both Bates and Paterson contend that reversible error occurred when the

Government, in its opening and closing statements and through the testimony of its chief witness and others, informed the jury that ten coconspirators had been previously tried and convicted for their parts in the conspiracy with which defendants here are charged.[1] Although no objection was made to the initial references to the convictions, we nevertheless agree that defendants must be given a new trial.

"A codefendant's guilty plea may not be used as substantive evidence of a defendant's guilt." *United States v. Baez,* 703 F.2d 453, 455 (10th Cir.1983). "Due to the extreme and unfair prejudice suffered by defendants in similar situations, courts and prosecutors generally are forbidden from mentioning that a codefendant has either pled guilty or been convicted." *United States v. Griffin,* 778 F.2d 707, 710 (11th Cir.1985).

> "If the codefendant testifies, however, either the government or the defense may elicit evidence of a guilty plea for the jury to consider in assessing the codefendant's credibility as a witness.... Because of the potential for prejudice, cautionary instructions limiting the jury's use of the guilty plea to permissible purposes are critical."

*Baez,* 703 F.2d at 455 (citations omitted). These general rules apply to the convictions of coconspirators as well as to codefendants. *Griffin,* 778 F.2d at 711.

The coconspirators' convictions at issue are those of the ten men arrested after they unloaded the marijuana from the plane in March. Shortly after beginning his opening argument, the prosecutor informed the jury that:

> "These men were ultimately brought to trial here in federal court here in Albuquerque, for their role in this matter. They were convicted and they are awaiting a decision on the appeals from their conviction at the present time.

> "The case the United States will develop will show the relationship between those ten men arrested and convicted in March, because of the activities in March at the defendant Austin's ranch, and the four men on trial today, and other persons who are not before you in this court."

Rec., vol. II, at 37 (emphasis added). These remarks constitute a clear attempt by the Government to argue to the jury that "guilty 'birds of a feather are flocked together.'" *Griffin,* 778 F.2d at 711 (quoting *Krulewitch v. United States,* 336 U.S. 440, 454, 69 S.Ct. 716, 723, 95 L.Ed. 790 (1949) (Jackson, J., concurring)). In his closing argument, the prosecutor told the jury:

> "And you know that there was a conspiracy, if for no other reason besides the large number of personnel involved; ten of them have already been tried and convicted and two of them testified before you. That is why, that is why the conspiracy statute is important to understand."

Rec., vol. IX, at 1651–52 (emphasis added). Here the Government was plainly arguing to the jury that the coconspirators' convictions established the evidence of a conspiracy, an element of the crime with which defendants were charged. In the face of such blatantly impermissible use of these convictions, we reject out of hand the Government's argument on appeal that the convictions were not used as substantive evidence of defendants' guilt.

The Government also argues that these convictions were properly admissible on redirect examination of their principal witness, Larrazaleta, to rehabilitate him. This argument overlooks the fact that the convictions were referred to by the Government in its opening statement and that evidence of them was elicited from Larraza-

---

1. Paterson also alleges that the evidence is insufficient to support his conspiracy conviction. We consider this claim because if we were to agree with Paterson, he would not be subject to retrial. *See Burks,* 437 U.S. at 18, 98 S.Ct. at 2150. We have carefully reviewed the record in this case under the standards set forth in Part I *supra,* and without detailing the evidence, which may be different on retrial, we conclude that it was adequate to support Paterson's conviction for conspiracy.

leta by the Government on his *direct* examination, before his credibility had been impeached. Thus, the need to rehabilitate him had not yet arisen. Moreover, under the pertinent case law and Fed.R.Evid. 609(a), it is the testifying witness' *own* prior conviction that is admissible on cross-examination to impeach his credibility or on redirect to rehabilitate him. *See, e.g., United States v. Edwards,* 716 F.2d 822, 825 (11th Cir.1983) (per curiam). We have found no case, and the Government has not cited one, in which a conviction other than that of the witness himself was properly admitted on the issue of his credibility.

Although two of the previously convicted coconspirators did appear as Government witnesses and testify to their prior convictions, no cautionary instruction was given informing the jury that this evidence was limited to the issue of credibility, and admonishing the jury that the convictions could not be considered as substantive evidence of guilt. In *Baez* we held that putting evidence of codefendants' convictions before the jury in the absence of a permissible purpose, or without a cautionary instruction limiting the jury's consideration to a permissible purpose, constituted plain error affecting substantial rights under Fed.R.Crim.P. 52(b).

We reach the same conclusion here.[2] Upon considering the entire record, we "cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error...." *Baez,* 703 F.2d at 455 (quoting *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946)). As in *Baez,* the significant evidence against Paterson and Bates was supplied by coconspirators who had been

given or were to receive favorable treatment from the Government in return for their testimony. The Government's primary witness, Larrazaleta, organized this conspiracy and admitted to a history of illegal drug activity. He had received immunity for his prior offenses, transactional immunity for New Mexico drug offenses, and had a substantial sentence he was serving reduced to time served. In addition, the Government agreed that he would not be required to testify against family members, any Latins in Dade County, Florida, or anyone he had personally recruited to participate in criminal activity. He also received other concessions regarding illegal activity in Utah and Minnesota. Jorge Acosta and Luis Santa Cruz testified at Larrazaleta's request and also received special commitments from the Government. While the evidence against Paterson and Bates was adequate, *see supra* note 1, it was far from overwhelming, and indeed they were each acquitted of one substantive count. Under these circumstances, the Government's repeated references to other conspirators who had been tried and found guilty could well have affected the jury's decision. Accordingly, a new trial is required.[3]

The conviction of Austin in No. 85–1272 is reversed for insufficiency of the evidence. The convictions of Paterson in No. 85–1247 and Bates in No. 85–1271 are reversed and remanded for a new trial.

---

2. We note that defense counsel belatedly moved for a mistrial or a limiting instruction during the redirect examination of Larrazaleta, after the matter previously had been presented to the jury without objection. These motions were denied. We also note that, although the district court instructed the jury during closing argument not to consider the whereabouts of four coconspirators, those coconspirators were not among the ten convicted off-loaders to whom the Government and Larrazaleta had previously

referred. Moreover, that instruction did not include an admonition that the coconspirators' convictions were completely irrelevant to the issues of defendants' guilt.

3. We do not address the other contentions of defendants Bates and Paterson either because they might not arise on retrial, or because we are not persuaded by their merit.