845 F.2d 233
 25 Fed. R. Evid. Serv. 949
 UNITED STATES of America, Plaintiff-Appellee,
v.
Lazaro MORA, Defendant-Appellant,
UNITED STATES of America, Plaintiff-Appellee,
v.
Jose DUARTE, Defendant-Appellant,
UNITED STATES of America, Plaintiff-Appellee,
v.
Ruben FORCADE, Defendant-Appellant,
UNITED STATES of America, Plaintiff-Appellee,
v.
Carlos AMADOR, Defendant-Appellant.
 Nos. 87-1412, 87-1419, 87-1428 and 87-1861.
 United States Court of Appeals,
Tenth Circuit.
 April 25, 1988.
 
 Peter John Orsi, Wichita, Kan., for defendants-appellants.
 Robin D. Fowler, Asst. U.S. Atty. (Benjamin L. Burgess, Jr., U.S. Atty., with him on the briefs), for plaintiff-appellee.
 Before LOGAN and McWILLIAMS, Circuit Judges, and BRATTON, District Judge.*
 LOGAN, Circuit Judge.
 
 
 1
 Defendants Lazaro Mora, Jose Duarte, Ruben Forcade, and Carlos Amador were tried jointly and convicted of distributing cocaine, in violation of 21 U.S.C. Sec. 841(a)(1), and conspiracy to distribute cocaine, in violation of 21 U.S.C. Sec. 846. Although defendants' appeals were argued separately, their contentions overlap considerably, and we dispose of all the appeals in this opinion.
 
 
 2
 All four defendants advance the following arguments to invalidate their convictions: (1) the prosecutor during closing arguments improperly commented on defendants' post-arrest silence; (2) the district court abused its discretion by admitting a bag of cocaine into evidence when a proper chain of custody had not been established; and (3) prior bad act evidence was improperly admitted. Additionally, defendants Duarte and Forcade argue that the evidence was not sufficient to support their convictions, and defendants Mora and Duarte assert that the jury was not properly instructed on the burden of proof required to convict them on the conspiracy charge.
 
 
 3
 * All defendants argue that the prosecutor in closing argument improperly commented on defendants' post-arrest silence, in violation of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). They complain of the following statements made by the prosecutor:
 
 
 4
 "Consider also the fact that Sharlene Fischer [a coconspirator who had pleaded guilty] gave her statement after she was arrested. She didn't wait two months and talk to her attorney that would please me or please any other government attorney. She told what she knew right after she was arrested and Buckey Buckmaster [another coconspirator who had pleaded guilty] did so within a month.... So when you view their credibility, consider the fact that they've entered a plea agreement but consider whether or not they're corroborated and consider when they gave those statements or whether they waited months and months to think up a story and come in here and tell you.
 
 
 5
 "... Something I'd like to remind you of. Sharlene Fischer gave a statement that night."
 
 
 6
 IV Tr. 783-84, 837.
 
 
 7
 In United States v. Morales-Quinones, 812 F.2d 604 (10th Cir.1987), we stated that
 
 
 8
 "[t]he test for determining if there has been an impermissible comment on a defendant's right to remain silent at the time of his arrest is 'whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment' on the defendant's right to remain silent. United States v. Barton, 731 F.2d 669, 675 (10th Cir.1984). The court must look to the context in which the statement was made in order to determine the manifest intention which prompted it and its natural and necessary impact on the jury."
 
 
 9
 Id. at 613. This is the same test employed for the analogous situation of prosecutorial commentary on a defendant's failure to testify at trial. See United States v. Barton, 731 F.2d 669, 674 (10th Cir.1984).[1]
 
 
 10
 Viewing the prosecutor's statements in context, we conclude that neither were they "manifestly intended" to be a comment on defendants' post-arrest silence nor would the jury "naturally and necessarily" take them as such. "Manifest intent will not be found 'if some other explanation for [the prosecutor's] remark is equally plausible.' " Steele v. Taylor, 684 F.2d 1193, 1204 (6th Cir.1982) (quoting United States v. Robinson, 651 F.2d 1188, 1197 (6th Cir.)), cert. denied, 454 U.S. 875, 102 S.Ct. 351, 70 L.Ed.2d 183 (1981), cert. denied, 460 U.S. 1053, 103 S.Ct. 1501, 75 L.Ed.2d 932 (1983). See also United States v. Carrodeguas, 747 F.2d 1390, 1395 (11th Cir.1984), cert. denied, 474 U.S. 816, 106 S.Ct. 60, 88 L.Ed.2d 49 (1985); United States v. Rochan, 563 F.2d 1246, 1249 (5th Cir.1977). In the context of the trial, the prosecutor's purpose in making the first statement complained of appears to be a response to attacks on Fischer's and Buckmaster's credibility. The second reference to Fischer's post-arrest statement was to explain, in response to defense arguments that these coconspirators received more lenient treatment because they were white, why Fischer and Buckmaster were allowed to plead guilty to lesser charges. Although the prosecutor's argument indirectly alluded to the fact that defendants did not assert innocence after their arrest, such an incidental reference contained in a proper argument is not sufficient to justify reversal of defendants' convictions. Cf. United States v. Robinson, --- U.S. ----, ----, 108 S.Ct. 864, 870, 99 L.Ed.2d 23 (1988) ("It is one thing to hold, as we did in Griffin [v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965) ], that the prosecutor may not treat a defendant's exercise of his right to remain silent at trial as substantive evidence of guilt; it is quite another to urge, as defendant does here, that the same reasoning would forbid the prosecutor from fairly responding to an argument of defendant by adverting to that silence").
 
 
 11
 In United States v. Sigal, 572 F.2d 1320 (9th Cir.1978), the Ninth Circuit rejected a claim similar to that advanced by defendants in the instant case. In Sigal, the prosecutor made the following statement: "But the point is, ladies and gentlemen, that he (a codefendant who pled and testified for the prosecution), unlike the defendants Baker and Sigal, came forward before the trial and admitted his guilt. He came forward and told us what he did." Id. at 1322 n. 1. The court held that this statement was a proper argument to bolster the credibility of the government's witness, id. at 1322 n. 2, and that when read in this context, the jury would not " 'naturally and necessarily take them to be comments on the failure of the accused to testify.' " Id. at 1322 (quoting United States v. Cornfeld, 563 F.2d 967, 971 (9th Cir.1977), cert. denied, 435 U.S. 922, 98 S.Ct. 1484, 55 L.Ed.2d 515 (1978)). We reach the same conclusion here.
 
 II
 
 12
 Defendants argue next that the district court abused its discretion by admitting into evidence a plastic bag containing eight ounces of cocaine, identified as Government's Exhibit 2, when the government's chain of custody over the cocaine had been interrupted temporarily. Detective Jon Zumalt of the Wichita Police Department, intending to make an undercover cocaine purchase, received from defendant Amador a bag containing white powder. Zumalt conducted a field test to determine that the powder was cocaine and then signalled to surveilling officers to assist with arrests. As the officers arrived in unmarked cars, Buckmaster and defendants Amador and Duarte started to flee. Zumalt threw the bag against a chain link fence and pursued Amador. This occurred at approximately 7:44 p.m.
 
 
 13
 Officer James Whittridge, who arrived at the scene a short time later, testified that he retrieved the bag of white powder lying next to the fence. He kept the bag for a little over an hour while waiting for a forensics officer to photograph it. He then took it to the police station at approximately 9:08 p.m. and secured it in an evidence locker. Later that night Zumalt and Whittridge placed it in a standard evidence bag, and initialed and sealed both bags. Zumalt carried the cocaine to the police laboratory chemist who tested it.
 
 
 14
 At trial defendants presented a local television station's videotape of the events of the evening of the arrest. This videotape included footage showing the bag of white powder lying against the fence and, later, that or a similar bag at a different location on a lawn. Defendants argue that this videotape shows that the bag must have been moved from where Zumalt threw it before Whittridge arrived, and that the government therefore should have been required to prove that no one tampered with the powder. Defendants presented no evidence of tampering, nor did they call the cameraman who filmed the cocaine lying on the lawn to testify.
 
 
 15
 The district court granted that the videotape showed that the chain of custody had been interrupted, but the court nevertheless admitted the bag of cocaine. The court stated
 
 
 16
 "that there has been a showing, even though interrupted, of chain of custody, and if the defendants are in any way going to introduce evidence that might raise an issue of tampering, the court may--may reconsider the ruling, but at this moment, there has been a sufficient showing which would allow the court to accept this evidence; therefore, the objections are overruled. Exhibit[s] number 1 and number 2 [are] received through this witness and the other witnesses who have testified establishing the chain."
 
 
 17
 III Tr. 608.
 
 
 18
 This court, in United States v. Gay, 774 F.2d 368 (10th Cir.1985), set forth the standard for reviewing the trial court's admission of physical evidence:
 
 
 19
 "The criterion for admissibility is a showing that the physical evidence proffered is in substantially the same condition as when the crime was committed. The factors to be considered by the trial judge in deciding whether the criterion has been met include the nature of the article, the circumstances surrounding its preservation and custody, and the likelihood of intermeddlers having tampered with it. We will not overturn the trial court's determination that the showing as to identity and nature of the exhibit is sufficient to warrant the admissibility of evidence except for a clear abuse of discretion. Absent an abuse of discretion, deficiencies in the chain of custody go to the weight of the evidence and not its admissibility."
 
 
 20
 Id. at 374 (citations and footnote omitted).
 
 
 21
 In the instant case, defendants merely showed that the bag itself was moved; they presented no evidence that the contents of the bag may have been tampered with or altered. They argued only a theory that some unidentified person, in the presence of numerous police officers, may have tampered with the contents of a bag containing cocaine. The district court did not abuse its discretion by admitting this evidence, in the absence of any evidence of tampering. See id. at 374-75. Any remaining uncertainty about the source of the exhibit affects only its weight and not its admissibility. United States v. Lepanto, 817 F.2d 1463, 1466-67 (10th Cir.1987); Gay, 774 F.2d at 374.
 
 III
 
 22
 Defendants argue that they were prejudiced by the admission of the testimony of Fischer and Buckmaster about an uncharged drug transaction involving defendants Mora and Amador which took place in September 1986, more than one month before the drug transaction for which defendants were arrested. Defendants argue that this evidence of a prior bad act was not admissible under Rule 404(b) of the Federal Rules of Evidence.
 
 
 23
 The following standard governs the introduction of evidence pursuant to Rule 404(b):
 
 
 24
 "The evidence (1) must tend to establish intent, knowledge, motive, identity, or absence of mistake or accident; (2) must also be so related to the charged offense that it serves to establish intent, knowledge, motive, identity, or absence of mistake or accident; and (3) must have real probative value, not just possible worth. The uncharged crime or act must also be close in time to the crime charged."
 
 
 25
 United States v. Kendall, 766 F.2d 1426, 1436 (10th Cir.1985) (citation omitted), cert. denied, 474 U.S. 1081, 106 S.Ct. 848, 88 L.Ed.2d 889 (1986).
 
 
 26
 The government here argues that the evidence was introduced to set up the foundation for the conspiracy. This evidence showed that Buckmaster and Fischer knew defendants Mora and Amador, and that those defendants on a previous occasion had provided one ounce of cocaine for resale to Zumalt. We note that the district court twice admonished the jury that the evidence of this transaction was to be considered only against Mora and Amador and not against Forcade and Duarte. These admonitions sufficiently protected defendants Forcade and Duarte, and we therefore reject their claim of undue prejudice by the introduction of this evidence.
 
 
 27
 As to defendants Mora and Amador, the evidence was introduced properly pursuant to Rule 404(b). The evidence helped explain how the conspiracy started. It also helped establish identity and interest. We are satisfied both that the evidence was sufficiently related to the charge to establish intent, motive, and conspiracy and that the evidence did have real probative value. See United States v. Primrose, 718 F.2d 1484, 1491-92 (10th Cir.1983) (defendant's prior acts admissible to establish foundation for conspiracy), cert. denied, 466 U.S. 974, 104 S.Ct. 2352, 80 L.Ed.2d 825 (1984); United States v. Ricardo, 619 F.2d 1124, 1131 (5th Cir.) (same), cert. denied, 449 U.S. 1063, 101 S.Ct. 789, 66 L.Ed.2d 607 (1980). Furthermore, the prior act was sufficiently close in time to the acts giving rise to the charges, insofar as the prior act occurred approximately one month before the sale of cocaine for which defendants were convicted. The trial court sufficiently identified the purposes for which the evidence was admitted. We therefore reject defendants' claim that the court abused its discretion in admitting the evidence.
 
 IV
 
 28
 Defendants Forcade and Duarte assert that the government did not introduce sufficient evidence to support their convictions, and that therefore the district court should have granted their motions for acquittal. We are satisfied that the evidence in the record, when viewed in the light most favorable to the government, supports the jury's guilty verdicts. See United States v. Hooks, 780 F.2d 1526, 1529-32 (10th Cir.), cert. denied, 475 U.S. 1128, 106 S.Ct. 1657, 90 L.Ed.2d 199 (1986).
 
 
 29
 The evidence shows that defendant Forcade knew of and participated in the negotiations for the government agents' attempted cocaine purchase. Forcade told Detective Zumalt that he and Mora would have to see the purchase money before they would produce the cocaine. After Detective Phil Marceau arrived with the purchase money, Forcade and Mora examined some of the money to see whether it was genuine. Forcade provided the detectives with their first knowledge of Amador as the source of the cocaine. When Detectives Marceau and Zumalt expressed concern that no cocaine would be brought, Forcade assured them that the cocaine would be there, and at one point he left to ask Mora and Fischer why it was taking them so long to arrive with the cocaine.
 
 
 30
 The evidence against defendant Duarte is more circumstantial. It showed that he arrived at the scene of the drug purchase with Amador, who left him in the car alone with a large quantity of cocaine. At the time of the delivery, Duarte performed several acts consistent with the role of a lookout. Without apparent instructions, he removed himself from the car, stood at its rear and observed the transfer of cocaine. Several times he looked up and down the street, and he watched Zumalt perform a field test on the cocaine. He began to flee when an unmarked police car approached and officers got out of the car. We believe that from this evidence the jury could find beyond a reasonable doubt that Duarte was a member of the conspiracy and a participant in the distribution of the cocaine.
 
 V
 
 31
 Finally, defendants Mora and Duarte assert error by the trial court when it refused their proposed instruction that a defendant's knowledge of the objective of the conspiracy must be proved by "clear and unequivocal" evidence. To support their assertion they cite Direct Sales Co. v. United States, 319 U.S. 703, 63 S.Ct. 1265, 87 L.Ed. 1674 (1943); United States v. Jones, 808 F.2d 754 (10th Cir.1987); and United States v. Austin, 786 F.2d 986 (10th Cir.1986). These cases involved challenges to the sufficiency of evidence, not to the jury instructions. Although knowledge of a conspiracy's objective, in order to establish the defendant's requisite intent, must be shown by "clear, not equivocal" evidence, see Direct Sales, 319 U.S. at 711, 63 S.Ct. at 1269, defendants have not cited, nor have we found, any case requiring that the jury be instructed in that language. These criminal defendants were entitled to a jury instruction addressing their theory of defense, but the instruction need not have been given in the form requested if the issues of the case were adequately covered in the instructions as a whole. United States v. Kapnison, 743 F.2d 1450, 1461 (10th Cir.1984), cert. denied, 471 U.S. 1015, 105 S.Ct. 2017, 85 L.Ed.2d 299 (1985); United States v. Rothbart, 723 F.2d 752, 754 (10th Cir.1983). As was stated in United States v. Burke, 781 F.2d 1234, 1240 (7th Cir.1985): "It is a mistake to lift language out of a passage such as this and insert it in a jury instruction. Language in judicial opinions is not meant to be given undigested to a jury."
 
 
 32
 We have reviewed the instructions given in this case, and we conclude that they accurately state the government's burden of proof on the elements of conspiracy. Simply instructing the jury that the defendants' intent had to be proved beyond a reasonable doubt was adequate; adding the "clear and unequivocal" language may have confused the jury. The court's refusal to give their proffered instruction did not prejudice defendants unfairly. See United States v. Hines, 696 F.2d 722, 733 (10th Cir.1982); Nipp v. United States, 422 F.2d 509, 514 (10th Cir.), cert. denied, 397 U.S. 1008, 90 S.Ct. 1235, 25 L.Ed.2d 420, 399 U.S. 913, 90 S.Ct. 2213, 26 L.Ed.2d 569 (1970).
 
 
 33
 AFFIRMED.
 
 
 
 *
 The Honorable Howard C. Bratton, Senior United States District Judge for the District of New Mexico, sitting by designation
 
 
 [1]
 Defendants Mora, Duarte and Amador argue that the prosecutor's statements were also an improper comment on their failure to testify at trial. This argument is without merit because the statements refer entirely to what Fischer and Buckmaster said before trial