**F I L E D**
**Tenth Circuit**
**JUL 5 2002**

**UNITED STATES COURT OF APPEALS**

**TENETH CIRCUIT**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff - Appellee, | No. 01-2218 |
| v. | (D.C. No. CR-00-801-JP) |
| ROBERTO LUIS RAMIREZ, | (D. New Mexico) |
| Defendant - Appellant. | |

**ORDER AND JUDGMENT** *

Before **TACHA** , Chief Judge, **LUCERO** , and **HARTZ** , Circuit Judges.

Defendant Roberto Luis Ramirez was charged with one count of conspiring to manufacture fifty grams of methamphetamine in violation of 21 U.S.C. § 846 and one count of manufacturing fifty grams of methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), and 18 U.S.C. § 2. After a three-day trial, the jury returned a guilty verdict on the conspiracy charge and a not-guilty verdict on

---

* The case is unanimously ordered submitted without oral argument pursuant to Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G).
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The Court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

the substantive charge. Ramirez appeals the district court's denial of his motion for acquittal. Our jurisdiction rests upon 28 U.S.C. § 1291.

**I**

While searching for a fugitive with no ties to this case, United States Marshals deputies came across a trailer that was emitting a strong chemical odor that the deputies associated with methamphetamine manufacturing. Looking through the trailer's window, the deputies saw an apparatus used to manufacture methamphetamine. As the deputies secured the area, a white pick-up truck approached and stopped at a gated "dead-end area." Two men unloaded items from the truck and then fled on foot; neither was identified or apprehended.

The deputies found several items near the truck that could be used in the process of manufacturing methamphetamine, including camping fuel, plastic tubing, and a bag of Red Devil Lye. As Ramirez states,

> The truck was registered to Alma Martinez, wife of [codefendant and brother-in-law] Guadalupe Lopez. In the pick up truck, agents found a sales receipt, traffic citation, and other paperwork related to Mr. Lopez. They found an identification card for Paul Rodriguez. Nothing in the pick up truck showed a connection with Mr. Ramirez.

(Appellant's Br. at 3–4 (citations omitted).)

Once a search warrant was obtained, DEA agents entered the trailer. Inside they found "a large capacity methamphetamine laboratory" (id. at 4) and "an ongoing methamphetamine 'cook'" (1 R. Doc. 49 at 2). A flask in the trailer

-2-

contained 4312 grams of a mixture that would yield 2890 grams of pure methamphetamine. Also in the trailer was a wallet bearing identification of Ernesto Garcia.

A fingerprint expert lifted seventy-two latent fingerprints from items in the trailer. Of these, seven matched Ramirez's fingerprints. A pair of prints was lifted off a twenty-two-liter flask containing methamphetamine hydro iodide. One print was lifted from a temperature control device connected to the flask. One was lifted from a bowl containing yellow chemical residue. Two prints were lifted from an eleven-liter flask. And one fingerprint was lifted off a five-gallon water bottle containing "pseudoephedrine tablets in the process of breaking down." (Appellant's Br. at 5.) (Pseudoephedrine is a precursor used in the manufacture of methamphetamine.)

At trial, Ramirez testified that the matching fingerprints did not establish his membership in a conspiracy to manufacture methamphetamine. He claimed that Ernesto Garcia paid him $200 to clean the trailer. Ramirez took such odd jobs, according to his testimony, because he was having economic troubles. "In the process of cleaning," Ramirez remarkably asserts, "he had probably handled the items on which his fingerprints were found." ( Id. at 8.) According to Ramirez, he barely knew his brother-in-law Guadalupe Lopez and—in a facial demonstration of naivete—was not aware that the trailer was being used as a

methamphetamine lab. ( Id. (stating that "[h]e did not know he was walking into a meth lab").)

This testimony notwithstanding, the evidence showed that the trailer's electricity bill—though in the name of another individual—was sent to Ramirez's house. Guadalupe Lopez gave Ramirez an automobile that Lopez would sometimes borrow without explaining why he needed it. At one point, Lopez incurred more than $700 in charges on Ramirez's cellular telephone. And although Lopez lived just minutes away, he occasionally spent the night at the Ramirez residence. A handgun found in Ramirez's house was, according to Ramirez, probably the property of Lopez. Finally, the veracity of Ramirez's testimony was called into question by evidence that in July 1999, he offered a prison guard a "substantial sum of money"—100,000 Mexican pesos—to help him escape. (Appellant's Br. at 19; see 3 Tr. at 418.)

**II**

Ramirez observes that the district court characterized the case against him as "a close, circumstantial case" and speculates that the court harbored doubts "about having denied the motion for judgment of acquittal." (Appellant's Br. at 2.) On the record before us, defendant's speculation is not readily understandable. Neither the "closeness" of a case nor the government's reliance on circumstantial evidence to prove defendant's guilt, however, resolves the

question whether the district court properly denied defendant's motion for acquittal. We review that decision de novo and will reverse only "if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Austin, 231 F.3d 1278, 1283 (10th Cir. 2000) (quotation omitted). Furthermore, we take "the evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—in the light most favorable to the government." United States v. Hanzlicek, 187 F.3d 1228, 1239 (10th Cir. 1999) (quotation omitted). At the outset of our analysis, we note that Ramirez does not take issue with the sentence imposed by the district court— inter alia, 120 months' imprisonment—and he does not claim that he is entitled to relief because the jury's verdicts—guilty of conspiracy but not guilty of the substantive offense—are allegedly inconsistent. See United States v. Jaynes, 75 F.3d 1493, 1508 (10th Cir. 1996) (stating that "consistency in verdicts is not required").

Ramirez claims that "the evidence . . . fails to prove beyond a reasonable doubt that he entered into an agreement to conspire to manufacture methamphetamine." (Appellant's Br. at 13–14.) "The only way the jury could have reached its verdict," claims Ramirez, "was by piling inference upon inference." ( Id. at 14.)

"Conspiracy prosecutions must demonstrate that two or more persons

agreed to violate the law, that the defendant knew at least the essential objectives of the conspiracy, that the defendant knowingly and voluntarily became a part of the conspiracy, and that the coconspirators were interdependent." United States v. Davis, 1 F.3d 1014, 1017 (10th Cir. 1993). Ramirez claims that the evidence, which we summarized above, does not support the jury's findings that he knew at least the essential objective of the conspiracy and that he knowingly and voluntarily became a part of the conspiracy. (Appellant's Br. at 15–16.)

We disagree. Although it is true that this Court in United States v. Rahseparian stated that "[a] defendant's knowledge of the purpose of the criminal conspiracy must be shown by 'clear, unequivocal evidence,'" 231 F.3d 1257, 1262 (10th Cir. 2000) (quoting United States v. Austin, 786 F.2d 986, 988 (10th Cir. 1986)), the same opinion notes that "we have repeatedly held that circumstantial evidence may support a jury's reasonable inference of guilty knowledge by the defendant," id. We cannot say that the jury in this case "engaged 'in a degree of speculation and conjecture that renders its findings a guess or mere possibility.'" Id. (quoting United States v. Jones, 44 F.3d 860, 865 (10th Cir. 1995)).

Without question, Ramirez was present at and familiar with the trailer containing what he terms "a large capacity methamphetamine laboratory." (Appellant's Br. at 4.) Fingerprints matching his were found on several pieces of

methamphetamine apparatus containing substances well along the way to completion of methamphetamine production. He had a substantial familial and financial relationship with at least one coconspirator, Guadalupe Lopez. We also note that evidence of Ramirez's efforts to escape are probative of his consciousness of guilt. See Fed. R. Evid. 404(b); United States v. Bartelho, 129 F.3d 663, 677 (1st Cir. 1997).

Ramirez correctly cites United States v. Quiroz-Hernandez, 48 F.3d 858 (5th Cir. 1995), for the proposition that "[m]ere presence at the scene of a crime or close association with others will not alone support the inference of a conspiracy." (Appellant's Br. at 16.) As Quiroz-Hernandez states, however, these very factors may be significant "within the context of the circumstances under which [they] occur[]." 48 F.3d at 866. "Circumstances altogether inconclusive, if separately considered, may, by their number and joint operation . . . be sufficient to constitute conclusive proof of guilt." Id. (quotation omitted and ellipses in original).

It makes no difference that the evidence against Ramirez can be "explained." ( See Appellant's Br. at 17 ("The fact that the electric bill was sent to his house was explained by Otelia Lopez, Mr. Ramirez' mother-in-law, and Mr. Ramirez' wife."); id. at 18 (stating that "Ramirez admitted that he entered the trailer despite a strong chemical smell and handled the flasks, although he

testified the reason for doing so was to clean the trailer at Garcia's request" (quotation omitted)); id. at 18 ("[M]r. Ramirez' testimony reflects that he had frequent contact with Mr. Lopez based on the family relationship, but did not necessarily like or get along with him."); id. at 19 (referring to Ramirez's attempted escape and stating, "While such evidence can support a finding of guilt, Mr. Ramirez explained that, since the others knew he was not involved, he hoped they would help him.").) As we held in Jaynes,

> The evidence necessary to support a verdict need not conclusively exclude every other reasonable hypothesis and need not negate all possibilities except guilt. It only has to reasonably support the jury's finding of guilt beyond a reasonable doubt. In reviewing a conviction for sufficiency of the evidence, we cannot weigh conflicting evidence or the credibility of witnesses since that duty is exclusively delegated to the jury. We must accept the jury's resolution of the evidence as long as it is within the bounds of reason. In viewing the evidence in the light most favorable to the government, we necessarily resolve any conflicts in the evidence in favor of the government and assume the jury found that evidence credible.

75 F.3d at 1498 (quotations omitted).

### III

Ramirez's conviction is **AFFIRMED**.

ENTERED FOR THE COURT

Carlos F. Lucero
Circuit Judge

-8-