**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Bobby Ray DAVIS,
Defendant-Appellant.**

No. 83-1971.

United States Court of Appeals,
Tenth Circuit.

July 9, 1985.

Kevin J. Kuhn of Montgomery Little Young Campbell & McGrew, P.C., Englewood, Colo., for defendant-appellant.

Janis H. Kockritz, Dept. of Justice, Washington, D.C. (Louis M. Fischer, Dept. of Justice, Washington, D.C., and Donn F. Baker, U.S. Atty., E.D. of Oklahoma, Muskogee, Okl., with her on the brief), for plaintiff-appellee.

Before BARRETT, MOORE and TIMBERS,* Circuit Judges.

JOHN P. MOORE, Circuit Judge.

Bobby Ray Davis was convicted by a jury of conspiracy to submit a false loan application to a bank and of aiding and abetting the submission of a false loan application in violation of 18 U.S.C. §§ 371, 1014 and 2 (1982). Davis asserts several claims of error, all of which we determine to be without merit. We therefore affirm.

The evidence at trial showed that in late August or early September 1981 a blank car title was discovered missing from the Johnston County, Oklahoma Tag Agency. Unindicted co-conspirator Charles Ray Allen acquired possession of the title, and offered to sell the blank title to unindicted co-conspirator Judy Rollins for $500. At that time, Allen apparently told Rollins she could fill in the blanks with any car model and then use the bogus title as collateral to obtain a loan. Allen also told Rollins he would put appellant's name on the title as owner of a fictitious two-door Datsun

---

* Honorable William H. Timbers, United States Circuit Judge, United States Court of Appeals, Second Circuit, sitting by designation.

280ZX automobile, and that Rollins could then take the title to a bank and obtain the loan money.

Rollins testified that on September 9, 1981, she met appellant in front of his place of employment. Appellant produced a car title on which his name and the designation of the nonexistent Datsun 280ZX were typed. The two then drove to an attorney's office where appellant signed the document in the presence of Rollins and notary Betty Roan.

Rollins took the title to the First National Bank of Ada, Oklahoma. Without asking to see the car, the bank agreed to lend Rollins $10,000 and proceeded to draw up a promissory note which listed the car as collateral. Rollins signed the note and left the bank with a cashier's check for $10,000 payable to appellant.

According to Rollins, she and appellant cashed the check and placed the proceeds in the glove compartment of Rollins' car. Later, Allen, appellant, and co-conspirator Bobby Joe Disheroon went to Rollins' home where Allen demanded that Rollins pay appellant $500. Allen, Rollins, Disheroon, and witness Linda Johnson all testified that Rollins paid, although there is some disagreement as to whether Rollins actually handed the money to appellant or Allen.

## I.

Appellant's chief argument on appeal is that allowing the jury to hear evidence that his alleged co-conspirators had pled guilty, coupled with the trial court's failure to give instructions limiting the jury's use of that evidence, constitutes plain error. We disagree.

After reading the indictment to the jury, the prosecutor, in his opening statement, stated that several government witnesses were convicted felons, having "pled guilty to charges involved in their part to this conspiracy." The prosecutor then proceeded to outline what he believed would be the testimony of each government witness, commenting briefly on the criminal involvement of a number of the witnesses. Defendant failed to object to this statement.

On direct examination, Rollins was allowed to testify, over appellant's hearsay objection, that she pleaded guilty to "borrowing $10,000 on a false car title." Charles Ray Allen, who was declared a hostile witness, admitted he had entered a guilty plea to conspiracy by taking "blank Oklahoma motor vehicle titles to the banks and getting loans on them." When Allen denied he had furnished the stolen title to appellant, the government read from the information to which Allen had pled. That information was later admitted over appellant's "best evidence" objection.

Similarly, Bobby Joe Disheroon testified that he had pled guilty to misprision of a felony, while witness Linda Johnson testified that her husband had "been involved in this thing," and had entered a guilty plea. Appellant did not object to the testimony of either Disheroon or Johnson. In closing argument, the prosecutor referred to Allen's conviction for "his involvement in this conspiracy," as well as the pleas of Rollins and Disheroon.

While the trial court instructed the jury that it could consider the conviction of a witness as bearing on his or her credibility, no other limitation was placed on the use of that conviction. Appellant neither requested nor tendered such an instruction, however. Further, appellant objected only to one instruction, and that pertained only to testimony of an accomplice.

In light of the argument made here, it should be noted that in cross-examining Rollins, Allen, Disheroon and Johnson, and in closing argument, appellant utilized the various guilty pleas of those witnesses to his own advantage. For example, on cross-examination counsel had Rollins confirm that she had not pled guilty to conspiracy, but rather had pled guilty to giving a false statement. While Allen admitted that he had pled guilty to conspiracy, he asserted upon cross-examination that he had never conspired with appellant. Allen further responded that if the charge to which he pled alleged that he had conspired with appellant, then he had pled guilty to a crime that

did not occur. Finally, Disheroon said that he had not pled guilty to a conspiracy charge and asserted that he had never participated with appellant "in any act of any kind." In closing, appellant's counsel emphasized that Rollins and Disheroon had not pled guilty to the charge of conspiring with anyone. He also stated that Linda Johnson's husband had pled guilty because "he was involved in it," and argued that Allen had a lot to lose by testifying that he had not conspired with appellant, contrary to his previous testimony and plea.

■ The law is clear that the guilty plea or conviction of a codefendant may not be used as substantive evidence of another's guilt. *United States v. Baez*, 703 F.2d 453, 455 (10th Cir.1983). If the co-conspirator testifies, however, either the government or the defense may elicit evidence of a guilty plea for the jury to consider in assessing the codefendant's credibility as a witness. *United States v. Baez, supra*, at 455. Evidence of the guilty plea of a codefendant who testifies may also be used to show acknowledgement by the witness of participation in the offense. *United States v. Wiesle*, 542 F.2d 61, 62 (8th Cir.1976). Thus, a codefendant who appears as a witness at trial of another may be assessed on all aspects of his involvement in that crime, including the disposition of charges against him. *United States v. Wiesle, supra*, at 62. In such circumstances, we have held that the trial judge should instruct the jury that the evidence of the guilty plea is received for these purposes alone, and that the plea cannot form the basis of any inference of the guilt of the defendant. *United States v. Baez, supra*, at 455.

■ In the present case, the record reflects that the guilty pleas of Rollins, Allen, and Disheroon were elicited for permissible purposes. The prosecution clearly used the plea of each witness to support the reasonableness of the witness's claim to firsthand knowledge based on his or her admitted participation. The pleas were also used to blunt defense efforts at impeachment and to dispel the suggestion that the government or its witnesses had

something to hide. Similarly, we find that the prosecutor's reference to the pleas of these witnesses, in his opening and closing arguments, was limited to the issue of their credibility. As such, those references were not improper. We also can find no error in the prosecutor's introduction, on redirect examination of Allen, of a copy of the information to which Allen had pled. The document was properly used to impeach Allen's testimony that appellant had not conspired with him. Further, as the plea was before the jury by way of direct testimony, placing the document in evidence was not prejudicial.

■ No such proper purpose can be attributed to the fact of James Johnson's conviction, which was established through the testimony of his wife, Linda Johnson. However, appellant's failure to object, his extensive questioning of Linda Johnson on cross-examination, and his statement about Johnson's involvement in closing, as well as the significant evidence of appellant's guilt, lead us to conclude that admission of evidence of Johnson's conviction cannot be said to have seriously affected appellant's "substantial rights" or to have had an unfair prejudicial impact on the jury's deliberations. Accordingly, admission of Johnson's conviction does not rise to the level of plain error. *United States v. Young*, —— U.S. ——, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985).

■ For many of the same reasons, we conclude that the trial court's failure to give a cautionary instruction concerning the substantive use of the codefendants' guilty pleas does not constitute reversible error. While the trial judge should specially instruct the jury about the permissible purposes to which such evidence may be used, *United States v. Baez, supra*, we have never held that a trial court's failure to so instruct constitutes *per se* plain error. Where, as in this case, appellant neither requested the instruction nor objected to its absence, as he must under Fed.R.Crim.P. 30, the entire record must be examined to determine whether the trial court's failure to give the cautionary instruction was so

egregious as to undermine the fundamental fairness of the trial and contribute to a miscarriage of justice. *United States v. Young, supra,* 105 S.Ct. at 1047; *United States v. Williams,* 445 F.2d 421, 424 (10th Cir.), *cert. denied,* 404 U.S. 966, 92 S.Ct. 342, 30 L.Ed.2d 286 (1971). In light of the overwhelming evidence of guilt present in this record, we conclude the trial court's failure to give a cautionary instruction was not such plain error as to require reversal. *United States v. Wiesle, supra,* at 63.

## II.

Appellant next asserts that his trial counsel's former representation of a government witness resulted in a conflict of interest that denied him effective assistance of counsel. We disagree again.

In open court, immediately before unindicted co-conspirator Charles Ray Allen took the stand in the government's case-in-chief, appellant's trial counsel informed the court that he had represented Allen in a state court plea agreement arising out of the instant transaction. He also stated he had represented Allen before, and that he had represented Allen's wife in a separate civil matter. Neither the trial court, the prosecutor, nor appellant made any response to defense counsel's revelation. Appellant now argues because no hearing was conducted to determine the nature, scope, and extent of this asserted conflict, and because the trial court made no effort to obtain defendant's approval or disapproval of his attorney's joint representation, this court can make no determination of whether appellant was denied his right to effective assistance of counsel. In light of this assertion, appellant asks that we remand for determination of whether an actual conflict existed.

■ Where defense counsel has represented a principal witness in litigation which has a factual relationship to issues in a pending criminal case, the conflicts principles from cases of multiple representation of defendants apply. *United States v. Winkle,* 722 F.2d 605, 610 (10th Cir.1983). Under these principles, if the defendant can show that his attorney's previous representation of the witness adversely affected the adequacy of defendant's subsequent representation, the defendant need not demonstrate prejudice to obtain relief. *Winkle, supra,* at 610; *Cuyler v. Sullivan,* 446 U.S. 335, 349–350, 100 S.Ct. 1708, 1718–1719, 64 L.Ed.2d 333 (1980).

■ Here, however, Allen's testimony was hostile to the prosecution and favorable to the defense. Additionally, the record discloses the scope of trial counsel's prior representation of Allen was limited to two to three days of negotiations. Furthermore, appellant has made no showing whatsoever that the adequacy of his representation was adversely affected by his trial attorney's former representation. Accordingly, trial counsel's association with Allen was minimal, and we conclude that no actual conflict of interest existed. Based on the record before us, we additionally conclude that the trial court's failure to inquire into the potential conflict was harmless error.

## III.

Appellant next claims that the trial court improperly admitted hearsay statements under the co-conspirator exception to the hearsay rule. The argument is without foundation.

Under Fed.R.Evid. 801(d)(2)(E), statements made by one member of a conspiracy are admissible evidence against co-conspirators under certain circumstances. Such statements are properly admitted into evidence as long as the trial judge specifically determines that the government has independently established by a preponderance: (1) that a conspiracy existed; (2) that the declarant and the defendant against whom the co-conspirator's statement is offered were members of the conspiracy; and (3) the statement was made during the course and in furtherance of the objects of the conspiracy. *United States v. Behrens,* 689 F.2d 154, 158 (10th Cir.), *cert. denied,* 459 U.S. 1088, 103 S.Ct. 573, 74 L.Ed.2d 934 (1982); *United States v. Petersen,* 611 F.2d

**1458**

1313, 1330 (10th Cir.1979), *cert. denied*, 447 U.S. 905, 100 S.Ct. 2985, 64 L.Ed.2d 854 (1980); *United States v. Andrews*, 585 F.2d 961, 966 (10th Cir.1978).

■ In the present case, appellant argues that the trial court improperly admitted hearsay statements of Rollins and Allen without first determining that each of the above-stated essential elements had been met. A careful review of the trial proceedings undermines appellant's assertion. The record discloses that *before* out-of-court statements of Allen and Rollins were admitted into evidence the trial court made the requisite findings under 801(d)(2)(E). First, the trial court determined that the conspiracy existed. (Vol. III at 85). Second, the court found that Allen, Rollins and appellant were members of the conspiracy. (Vol. III at 125). Finally, the court found that the statements of Rollins and Allen were made in furtherance of the conspiracy. (Vol. III at 130). Only at this point did the court allow witnesses to testify as to the statements made by Allen and Rollins. No additional findings were required to be made by the trial court.

■ Appellant also claims that statements made at the home of Rollins concerning payment to appellant were inadmissible because they were not made during the pendency of the conspiracy and were, therefore, not made in its furtherance. It is appellant's position that the conspiracy, if it existed, terminated when the loan check was cashed. We find no support in the record for appellant's contention.

■ The record makes clear that appellant, Allen, and Disheroon met at Rollins' house in order to collect money owed for the co-conspirator's assistance in obtaining the $10,000 loan. It is well settled that the distribution of the proceeds of a conspiracy is an act occurring during the pendency of the conspiracy. Thus, as in this case, co-conspirator hearsay statements made during the "payoff period" are admissible under 801(d)(2)(E). *United States v. Knuck-*

*les*, 581 F.2d 305, 313 (2nd Cir.), *cert. denied*, 439 U.S. 986, 99 S.Ct. 581, 58 L.Ed.2d 659 (1978); *United States v. Walker*, 653 F.2d 1343, 1347–1350 (9th Cir.1981), *cert. denied*, 455 U.S. 908, 102 S.Ct. 1253, 71 L.Ed.2d 446 (1982); *United States v. James*, 494 F.2d 1007, 1026 (D.C.Cir.), *cert. denied*, 419 U.S. 1020, 95 S.Ct. 495, 42 L.Ed.2d 294 (1974); *cf. Grunewald v. United States*, 353 U.S. 391, 405, 77 S.Ct. 963, 974, 1 L.Ed.2d 931 (1957).

## IV.

■ Appellant makes three additional arguments why his conviction should be reversed by this court. Appellant claims: (1) that the trial court committed seven erroneous evidentiary rulings which amount to plain error; (2) that allegedly improper remarks made by the prosecutor in his opening and closing warrant reversal; and (3) that the evidence taken as a whole is insufficient to sustain defendant's convictions. We find appellant's failure to make contemporaneous objection to the evidentiary rulings and his failure to timely object to the prosecutor's allegedly improper remarks in opening and closing arguments to be fatal to his appeal on these issues. *United States v. Young, supra.* We also conclude that appellant's claim that the evidence was insufficient to sustain defendant's conviction is without merit.

Upon the foregoing, it is ordered that the judgment of the trial court is affirmed. The mandate shall issue forthwith.