**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 3 1997**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

PAULA J. MARONEY,

    Defendant-Appellant.

No. 96-1314

(D.C. No. 96-CR-7)

(D. Colo.)

---

ORDER AND JUDGMENT[*]

---

Before ANDERSON, TACHA, and BALDOCK, Circuit Judges.[**]

---

A jury convicted Defendant on 25-counts of mail fraud, in violation of 18 U.S.C. §§ 2 and 1341. Defendant was sentenced to twenty-one months imprisonment. This direct appeal followed. On appeal, Defendant asserts that the district court erred in admitting evidence of Government witness Judy Williams' intended guilty plea. Defendant also appeals her sentence, arguing that the district court miscalculated the

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. 34.1.9. The case is therefore ordered submitted without oral argument.

U.S.S.G. § 2F1.1 loss to the victims, resulting in a higher total offense level. Our jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We affirm.

I.

Defendant, a licensed physical therapist and owner of H&W Therapy in Pueblo, Colorado, was convicted of overbilling the Colorado workers' compensation authority by improperly seeking reimbursements for "routine office visits." Under Colorado law, routine office visits are only reimbursable when the patient is treated by a licensed physical therapist. However, Defendant sought reimbursement for routine office visits regardless of who treated the patient. Defendant was also convicted of defrauding Medicare by falsifying billing information sent by H&W Therapy to three nursing homes in Pueblo, Colorado.

II.

First, Defendant argues that the district court erred by admitting testimony regarding the guilty plea of Judy Williams, chief financial officer of H&W Therapy. Evidentiary rulings by the trial court are reviewed for abuse of discretion. United States v. Wilson, 107 F.3d 774, 780 (10th Cir. 1997). We review such rulings by considering the record as a whole. Id. Under this standard, we will not disturb the district court's decision unless the district court "made a clear error of judgment or exceeded the bounds of permissible choice." McEwen v. City of Norman, 926 F.2d 1539, 1553-54 (10th Cir. 1991) (quoting United States v. Ortiz, 804 F.2d 1161, 1164 n.2 (10th Cir. 1986)).

2

Prior to testifying, Williams agreed to plead guilty to one count of making a false statement in an application for payment under a state or federal health care program, in violation of 42 U.S.C. § 1320a-7b(a)(1). Before calling Williams to testify, the Government asked the district court for permission to inquire about the plea agreement on direct examination to take the "sting out" of Williams' guilty plea and to show her acknowledgment of participation in the offense. Counsel for Defendant objected to the introduction of the evidence pursuant to Fed. R. Evid. 403 and informed the court that he would not cross-examine Williams regarding the intended guilty plea or plea agreement. The district court overruled the objection. Williams then testified at length regarding her involvement in the events at issue in the case. Near the conclusion of her direct examination, the Government, subject to a limiting instruction[1], inquired about Williams' intended guilty plea by asking whether, because of her employment with H&W Therapy,

---

[1]The district court gave the following limiting instruction:

> Members of the jury, you will now hear testimony from Judith Williams concerning her agreement with the Government to enter a guilty plea to a misdemeanor offense for a crime different than the crime Mrs. Maroney has been charged with by the Government. You are instructed and admonished that you may consider this portion of her testimony only for the purposes of assessing the witness' credibility and to support the reasonableness of the witness' claim to first-hand knowledge. Evidence of the witness' agreement to plead guilty is received for these sole purposes, and the agreement cannot form the basis of any inference of the guilt of Defendant. You must remember that Mrs. Maroney is on trial here only for the offenses charged, not for other acts. Remember that you must not return a guilty verdict against Mrs. Maroney unless the Government proves each and every element of each crime charged beyond a reasonable doubt.

she had entered into an agreement with the Government. Defendant's counsel objected, arguing that the phrasing of the question contravened the limiting instruction. The district court sustained the objection and instructed the jury to disregard the question. The Government then elicited from Williams that she had entered into a plea agreement "in this case" and had agreed to plead guilty to a misdemeanor. During cross-examination, Defendant's counsel did not question Williams about the plea agreement.

Although the guilty plea of a co-participant cannot be used as substantive evidence of Defendant's guilt, either the Government or Defendant may elicit evidence of a guilty plea for permissible reasons, including assessing the credibility of the witness or showing acknowledgment by the witness of participation in the offense. United States v. Davis, 766 F.2d 1452, 1456 (10th Cir. 1985). The use of a co-participant's guilty plea requires an accompanying jury instruction limiting consideration of the evidence to the permissible purposes and stating that the jury cannot infer from the witness' guilty plea the guilt of Defendant. Id.

In this case, Defendant argues that because she relinquished her right to question Williams about her guilty plea during cross-examination, the testimony was not necessary to assess Williams' credibility and should have been excluded. She urges us to follow the approach taken by the Third Circuit in United States v. Thomas, 998 F.2d 1202 (3rd Cir. 1993), and find that the district court erred in admitting the testimony. See Id. at 1205 (holding that where Defendant did not challenge credibility of witnesses, it was error to

4

allow Government to introduce evidence of guilty pleas); but see United States v. Gaev, 24 F.3d 473, 478 (3rd Cir. 1994) (evidence of plea agreements properly admitted, even though Defendant offered not to challenge credibility of witnesses on basis of plea agreements).   We need not address the merits of this argument, however, because the Government clearly used the evidence for a permissible purpose -- to support, by her admitted participation, the reasonableness of Williams' claim of firsthand knowledge. See Davis, 766 F.2d at 1456.   Although Defendant argues that the plea agreement should not have come in for this purpose either, Defendant challenged Williams' firsthand knowledge by questioning the degree of Williams' involvement and her understanding of the circumstances which formed the basis for the charges against Defendant.  Thus, the testimony was introduced for a proper purpose.

Our review of the record also shows that the Government did not improperly emphasize the guilty plea.   The Government referenced it briefly only during the direct examination of Williams.   Furthermore, the district court, not once but twice, properly instructed the jury regarding the use of this evidence.  See United States v. Massey, 48 F.3d 1560, 1569 (10th Cir. 1995) ("cautionary instructions are ordinarily sufficient to cure alleged prejudice").  Under the circumstances, we cannot find that the district court made a clear error of judgment or exceeded the bounds of permissible choice.  Thus, the district court did not abuse its discretion by admitting the testimony.

Next, Defendant argues that the district court miscalculated the loss to the victims under U.S.S.G. § 2F1.1.  We review the district court's factual determination of a U.S.S.G. § 2F1.1 loss for clear error.  United States v. Galbraith, 20 F.3d 1054, 1058 (10th Cir. 1994).  Under this standard, we uphold "any district court determination that falls within a broad range of permissible conclusions."  Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 400 (1990).

Section 2F1.1 increases the base offense level for a fraud offense to account for the loss caused by Defendant.  In this case, Defendant's final offense level was 16, with a guideline range of 21 to 27 months.  This included a five-level § 5K2 downward departure for extraordinary family responsibilities and a § 2F1.1 nine-level enhancement for a loss of more than $350,000 but less than $500,000.  Defendant argues that the district court erred in adopting the nine-level enhancement.

After an evidentiary hearing on the issue of loss, the district court concluded that the Colorado workers' compensation authority sustained a loss of $81,703 and Medicare sustained a loss of $270,598[2], for a total loss of $352,301.  Defendant argues that $21,717 should not have been included in the Medicare loss amount because it represents

---

[2]This amount includes $148,072 in overpayments made by Medicare to the nursing homes and $122,526 repaid by Defendant to University Park Care Center nursing home.

the estimated overpayments made by Medicare to University Park Care Center (hereinafter "UPCC") for services provided by Defendant during 1991. Defendant asserts that the testimony of UPCC executive director Vera Kloepfer precludes including the $21,717 in the loss amount. Kloepfer testified that, although she did not review the 1989-91 records with the same intensity as later records, she did not discover any billing discrepancies for 1989-91. In light of Kloepfer's testimony, the district court reduced the § 2F1.1 loss amount by $53,289, which represented the amount of estimated Medicare overpayments made to UPCC in 1989 and 1990. Defendant now argues that the district court's reduction should have included the 1991 estimated overpayment amount of $21,717 as well.

The district court's calculation of loss need not be exact. Instead, the district court may make a reasonable estimate of loss, based on all information available. United States v. McAlpine, 32 F.3d 484, 488 (10th Cir. 1994). After reviewing the record, we conclude that the district court's inclusion of the $21,717 in the loss calculation was not unreasonable. Government witness Alan J. Peters testified at the sentencing hearing that he calculated a UPCC loss for 1991 based on daily calendars, hourly logs and interviews with H&P Therapy's employees. In light of the factual support in the record, the district court's decision to include the 1991 loss falls within the range of "permissible conclusions." Thus, the § 2F1.1 loss calculation, which the district court characterized as a "conservative estimate," was not clearly erroneous.

The judgment of the district court is

AFFIRMED.

Entered for the Court,

Bobby R. Baldock
Circuit Judge
