**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 1 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

CRUZ BLANCO-RODRIGUEZ,

Defendant - Appellant.

No. 98-2116

(D.C. No. CR-97-103-JC)

(D. New Mex.)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, **McKAY**, and **MURPHY**, Circuit Judges.

After examining the briefs and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

On July 16, 1997, a grand jury returned a second superseding indictment charging Defendant Cruz Blanco-Rodriguez with one count of conspiracy to bring

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

illegal immigrants into the United States for commercial advantage and private financial gain and aiding and abetting in the conspiracy in violation of 8 U.S.C. § 1324(a)(2)(B)(ii) and 18 U.S.C. §§ 2 and 371; two counts of bringing in illegal immigrants and aiding and abetting in those efforts in violation of 8 U.S.C. § 1324(a)(2)(B)(ii) and 18 U.S.C. § 2; and two counts of transporting illegal immigrants in violation of 8 U.S.C. § 1324(a)(1)(A)(ii), (a)(1)(B)(i), and (a)(1)(A)(v)(II).[1]  After a two-day trial ending on October 8, 1997, a jury convicted Defendant on all five counts, and the district court sentenced Defendant to concurrent terms of thirty-six months' imprisonment followed by three years' supervised release.  Defendant raises five arguments to appeal his conviction.  We exercise jurisdiction pursuant to 28 U.S.C. § 1291.

At approximately 6:00 p.m. on January 24, 1997, Coconspirator Miranda, Mr. Rojo, and Mr. Leandro Rodriguez-Moreno guided a group of about twelve Mexican nationals across the United States border into New Mexico.  After walking for about ten hours and twenty-two miles, the group stopped a few hundred yards north of the intersection of Espejo and Crawford county roads and

---

[1]Three coconspirators also were indicted on the same and additional charges in the second superseding indictment.  Mr. Roxer Acosta-Arzaga and Mr. Cesar Miranda-Rivas entered into plea agreements before Defendant's trial.  Mr. Jesus Vargas-Aragomez was a fugitive at the time of Defendant's trial. Additionally, Mr. Ramon Rojo-Rodelas was arrested and indicted in a related case on two similar charges.  Mr. Rojo pled guilty to both charges and testified against Defendant.

sat down in the desert bush on what was by then the early morning of January 25, 1997. Several people then left the group and walked southwest a short distance to a trailer belonging to Defendant. Meanwhile, three United States border patrol agents were tracking with an infrared camera the movements of both the people who remained sitting in the bush and those who walked to the trailer. The agents observed several persons in and around the vehicles parked under the carport of the trailer and, shortly thereafter, saw a truck leave the trailer. The truck headed north to the area where the remaining immigrants were hiding. Several, but not all, of the immigrants climbed aboard the truck. The truck then proceeded north toward Coconspirator Vargas' house in Deming, New Mexico, which was approximately twelve miles away.

After seeing "a bunch of bodies" in the truck when it passed his location, R., Vol. III at 80, Border Patrol Agent Steve Dudyak stopped the truck. He found ten or eleven illegal immigrants in the truck and arrested the driver, Mr. Rodriguez. The two other border patrol agents then apprehended the persons who were still sitting in the bush. One of the agents then followed tracks from the location in the bush to Defendant's trailer. While the agent was inspecting the tracks and looking around the trailer, Defendant stuck his head out of the trailer's window and spoke to the agent. He admitted that one person who had come asking for water was inside, and he essentially invited the agent inside to talk to

that person.  The agent went inside the trailer, found Coconspirator Miranda, and, upon discovering that he was an illegal immigrant, arrested him.

On June 20, 1997, Agent Dudyak tracked a group of individuals from a freight yard to a residence in Deming.  Coconspirator Vargas answered the door and admitted that six or seven Mexican nationals were hiding in the bathroom.  After these individuals were arrested, they indicated that Coconspirator Acosta was their guide.  Defendant was arrested after he was implicated by agent reports and statements from members of the groups that were arrested on January 25 and June 20, 1997.

I.

Defendant first contends that there was a variance between the evidence presented at trial and the conspiracy charge alleged in the indictment and that this variance prejudiced his substantial rights.  Specifically, he claims that no independent evidence was presented to prove the existence of the charged conspiracy and that statements of alleged co-conspirators were not admissible as proof of Defendant's participation in the conspiracy.  We review de novo questions of law concerning whether a variance existed and whether it substantially prejudiced the defendant.  See United States v. Williamson, 53 F.3d 1500, 1512 (10th Cir.), cert. denied sub nom. Dryden v. United States, 516 U.S.

882 (1995).

"A variance arises when the evidence adduced at trial establishes facts different from those alleged in an indictment." Dunn v. United States, 442 U.S. 100, 105 (1979); accord United States v. Ailsworth, 138 F.3d 843, 848 (10th Cir.), cert. denied, __ U.S. __ , 119 S. Ct. 221 (1998). However, a variance between the indictment and the proof constitutes reversible error only if it affects the defendant's substantial rights grounded in the Fifth and Sixth Amendments. See Berger v. United States, 295 U.S. 78, 82 (1935); Ailsworth, 138 F.3d at 848-49. Applying these principles to this case, we compare the allegation of conspiracy contained in the indictment against the proof offered at trial. Count I of the second superseding indictment charged that between January 25 and June 20, 1997, Defendant knowingly and intentionally conspired with Coconspirators Miranda, Vargas, Acosta, and others to knowingly bring illegal immigrants into the United States for commercial advantage and private financial gain. The indictment also alleged that four overt acts were committed in furtherance of the conspiracy. First, the indictment indicated that on or about January 25, 1997, Coconspirator Miranda, Mr. Rojo, and Mr. Rodriguez guided a group of illegal immigrants into the United States on behalf of Coconspirator Vargas. Second, the indictment stated that on or about January 25, 1997, Defendant supplied a vehicle

which Mr. Rodriguez used to transport the illegal immigrants.[2]

At trial, the government presented proof that on January 25, 1997, Coconspirator Miranda, Mr. Rojo, and Mr. Rodriguez guided a group of illegal immigrants from Mexico into the United States. Mr. Rojo testified about this plan and stated that he was directed by Coconspirator Vargas to walk from the border to Defendant's house where he would pick up a vehicle. From there, he testified, he would use Defendant's truck to transport the illegal immigrants to Coconspirator Vargas' house in Deming, New Mexico. According to Mr. Rojo's testimony, he arrived at Defendant's trailer on January 25, 1997, between 4:00 a.m. and 6:00 a.m. Defendant then allowed Mr. Rojo to use the truck to transport the illegal aliens from the trailer to Deming. Mr. Rojo further testified that he had been to Defendant's house in November 1996,[3] and he identified Defendant in the courtroom. Additionally, he testified that he had been paid for bringing illegal aliens to Coconspirator Vargas' house, he knew Coconspirator Vargas paid Defendant for the use of his truck in transporting aliens, and he had seen Coconspirator Vargas pay Defendant at least once for that purpose. One of the

---

[2]The second and third overt acts involved the incidents on June 19 and 20, 1997, during which Coconspirator Acosta guided a group of illegal aliens into the United States and Coconspirator Vargas kept illegal aliens at his home.

[3]The record contains factual inconsistencies concerning whether Mr. Rojo visited Defendant at his house in December 1996. Because this evidence is not critical to the government's proof of conspiracy, we do not address its effect on our analysis of whether a variance existed.

immigrants brought into the United States on January 24-25, 1997, testified that he paid $450 for Coconspirator Miranda to guide him into the United States.

This evidence supports reasonable inferences that Defendant willfully joined in the conspiracy to smuggle illegal aliens into the United States and that he was paid for his participation. Because the proof at trial corresponded to the notice given Defendant by the charges in the indictment, we conclude that no variance occurred.[4]

## II.

Defendant also argues that we should reverse his conviction for conspiracy because the district court admitted a coconspirator's guilty plea agreement into evidence without giving proper limiting instructions. He asserts that the admission of Mr. Rojo's guilty plea left the jury with the impression that Defendant must be guilty since Mr. Rojo pled guilty to the conspiracy.[5]

---

[4]To the extent that Defendant's variance argument focuses on the admissibility of the coconspirator's testimony, we review this argument for plain error because Defendant did not object to this testimony at trial. See Fed. R. Crim. P. 52(b); United States v. Clifton, 127 F.3d 969, 970 (10th Cir. 1997). The district court did not err in allowing Mr. Rojo to testify to his personal knowledge of the events relating to the charges for which Defendant was indicted. Cf. United States v. McGuire, 27 F.3d 457, 462 (10th Cir. 1994) (recognizing "general rule that in a criminal case a jury may convict a defendant on the uncorroborated testimony of an accomplice").

[5]We do not address Defendant's argument about Coconspirator Miranda's
(continued...)

The government called Mr. Rojo as a witness in its case-in-chief. In a separate but related case, Mr. Rojo pled guilty to two counts: conspiracy to bring and bringing illegal aliens into the United States on January 25, 1997, for commercial advantage and private financial gain. During direct examination, the government questioned Mr. Rojo about his guilty plea, his relationship with the government, his sentencing, and whether he was testifying truthfully. Defense counsel cross-examined Mr. Rojo about his guilty plea and attempted to impeach his credibility based on his obligation to testify and his relationship with the government. Defendant did not object to Mr. Rojo's testimony or to the admission of the guilty plea agreement into evidence. Nor did he request a limiting instruction. Because Defendant's failure to object or request a limiting instruction normally constitutes a waiver of those issues, we review only for plain error. See Fed. R. Crim. P. 52(b); United States v. Pedraza, 27 F.3d 1515, 1525 (10th Cir.), cert. denied, 513 U.S. 941 (1994). To establish plain error, Defendant must show that a clear and obvious error affected his substantial rights and seriously affected the integrity of his judicial proceedings. See Johnson v. United States, 520 U.S. 461, 467 (1997) (citing United States v. Olano, 507 U.S. 725, 732 (1993)).

---

[5](...continued) guilty plea because it was not the subject of testimony and was not admitted into evidence.

It is well established that the guilt of a coconspirator may not be used to establish the guilt of a defendant. See, e.g., Pedraza, 27 F.3d at 1525; United States v. Baez, 703 F.2d 453, 455 (10th Cir. 1983). Accordingly, a coconspirator's "guilty plea may not be used as substantive evidence of a defendant's guilt." Baez, 703 F.2d at 455. "If the [coconspirator] testifies, however, either the government or the defense may elicit evidence of a guilty plea for the jury to consider in assessing the [coconspirator's] credibility as a witness." Id. "Instructions that specifically limit the use of a coconspirator's guilty plea [to permissible purposes] should be given, and the failure to do so may rise to the level of plain error." Pedraza, 27 F.3d at 1525; United States v. Austin, 786 F.2d 986, 991-92 (10th Cir. 1986) (applying relevant principles to conclude that coconspirators' prior convictions were used as substantive evidence of defendants' guilt).

To determine whether the failure to give a cautionary instruction constitutes plain error, we consider the following factors: (1) whether there was a proper purpose in introducing the guilty plea; (2) whether the guilty plea was improperly emphasized or used as evidence of substantive guilt; (3) whether the alleged error was invited by defense counsel; (4) whether the failure to object could have been the result of tactical considerations; (5) whether a limiting instruction was given; and (6) whether, in light of all of the evidence, the error was harmless beyond a

reasonable doubt.  See Pedraza, 27 F.3d at 1526; United States v. Paterson, 780 F.2d 883, 885 (10th Cir. 1986) (McKay, J., dissenting).

In light of these factors, we conclude the district court did not commit plain error in admitting the plea agreement of a coconspirator.  First, at least two permissible purposes existed for admitting Mr. Rojo's guilty plea:  (1) to enable the jury to assess Mr. Rojo's credibility in light of his relationship with the government, see Pedraza, 27 F.3d at 1525-26; and (2) to explain Mr. Rojo's firsthand knowledge of Defendant's participation in the conspiracy to smuggle illegal aliens into the United States.  See United States v. Gaev, 24 F.3d 473, 476 (3d Cir.), cert. denied, 513 U.S. 1015 (1994).

With respect to the second factor, Defendant has not identified any specific instance of improper use or emphasis, and our review of the record indicates that the government did not improperly emphasize the guilty plea or attempt to use it as substantive evidence of Defendant's guilt.  In its opening statement, the government stated that the jury would hear from border patrol agents and from Mr. Rojo, and it outlined what it believed would be these witnesses' testimony.  In describing Mr. Rojo's prospective testimony, the government scantily referred to the guilty plea.  This reference was limited to the issue of Mr. Rojo's credibility and was not improper.  See United States v. Davis, 766 F.2d 1452, 1456 (10th Cir.), cert. denied, 474 U.S. 908 (1985).  The government did not refer

to the guilty plea in its closing argument, and, in its closing rebuttal, it tangentially referred to the plea agreement only *after* defense counsel used Mr. Rojo's guilty plea in her closing argument to cast doubt on Mr. Rojo's veracity and credibility. Thus, our review of the second, third, and fourth factors indicates that the government introduced the coconspirator's guilty plea agreement into evidence only after both parties had extensively questioned Mr. Rojo about the terms of the plea agreement and his purposes in testifying. "[A]lthough we cannot say the alleged error was invited by defense counsel or the result of a tactical consideration, counsel for [Defendant] was also responsible for eliciting" the substance of the guilty plea in her cross-examination of Mr. Rojo. Pedraza, 27 F.3d at 1526. Consequently, admitting a copy of the written plea agreement also did not prejudice Defendant when his counsel already had elicited the substance of the plea from Mr. Rojo upon cross-examination. See Davis, 766 F.2d at 1456. In light of the manner in which the guilty plea was utilized at trial, we do not think that the government's references to the plea rise to the level of plain error. Compare Austin, 786 F.2d at 991 (finding plain error where prosecution repeatedly referred to codefendant's guilty plea during opening and closing), with United States v. Peterman, 841 F.2d 1474, 1481 (10th Cir. 1988) (concluding there was no plain error where witness' prior conviction was mentioned only during examination of witness), cert. denied, 488 U.S. 1004

-11-

(1989), and Davis, 766 F.2d at 1455-57 (finding no plain error where defendant used guilty pleas to own advantage and government's reference to pleas was limited to credibility issues).

Moreover, the district court gave the jury an instruction at the close of evidence which cautioned: "The fact that an accomplice has entered a plea of guilty to the offense charged is not evidence in and of itself of the guilt of any other person." R., Vol. II at 206. While the court did not give a limiting instruction to the jury at the time the plea agreement was admitted into evidence and did not use the specific words instructing the jury that the guilty plea itself could only be used to assess the witness' credibility, we think that the court's instruction at the close of evidence described herein tempered any prejudice which may have stemmed from the lack of other proper instructions. The above instruction sufficiently informed the jury that the guilt of a coconspirator is not substantive evidence of the defendant's guilt. Further, our conclusion is buttressed by the court's instruction to the jury that it "should never convict a defendant upon the unsupported testimony of an alleged accomplice unless [it] believe[s] that testimony beyond a reasonable doubt." Id. This instruction goes to the heart of the jury's competence and duty to assess the credibility of witnesses.

Finally, in light of the record evidence and inferences of Defendant's guilt

in this case, we conclude that the absence of a limiting instruction "'did not have a substantial influence on the outcome of the trial nor does it leave [us] in grave doubt as to whether it had such effect.'" Pedraza, 27 F.3d at 1526 (citation omitted). Based on our review of the above factors, the court's admission of the guilty plea agreement coupled with its failure to give an instruction that specifically limited the use of the coconspirator's guilty plea to that of assessing his credibility did not result in plain error.[6]

III.

As noted above, Mr. Rojo testified at Defendant's trial pursuant to a plea agreement. Defendant contends that Mr. Rojo's testimony was inadmissible and reversible error because it was obtained in violation of 18 U.S.C. § 201(c)(2). This argument essentially parallels the argument recently pursued by the defendant in United States v. Singleton, 144 F.3d 1343 (10th Cir. 1998), reh'g en banc granted and opinion vacated, and rejected by a majority of this court on rehearing en banc. See United States v. Singleton, ___ F.3d ___ , 1999 WL 6469

---

[6]To the extent that Defendant raises a claim of ineffective assistance of counsel, such claims generally should be brought under 28 U.S.C. § 2255. See United States v. Galloway, 56 F.3d 1239, 1240 (10th Cir. 1995). However, because we have concluded that the admission of the plea agreement and the failure to give proper limiting instructions did not amount to plain error, Defendant cannot show sufficient prejudice to establish an effective assistance of counsel claim under Strickland v. Washington, 466 U.S. 668 (1984).

(10th Cir. Jan. 8, 1999).  Accordingly, the Singleton en banc decision precludes Defendant's argument that testimony given in exchange for leniency violates 18 U.S.C. § 201(c)(2).

IV.

Defendant also argues that the district court erred in admitting under Federal Rule of Evidence 404(b) the following testimony:  Agent Adrian Aizpuru's testimony regarding the September 1996 seizure of illegal immigrants from Defendant's home and Mr. Rojo's testimony that he previously had been to Defendant's house in November 1996 and that Defendant himself had taken illegal aliens to Deming in his truck in the past.[7]  Because Defendant failed to object to the admission of this testimony at trial, we review only for plain error. See Fed. R. Crim. P. 52(b); Fed. R. Evid. 103(a); United States v. Mendoza-Salgado, 964 F.2d 993, 1008 (10th Cir. 1992).  As we noted above, plain error exists when an error has seriously affected the fairness, integrity, or

---

[7]The record contains factual inconsistencies about whether Mr. Rojo was present at Defendant's house in December 1996.  Mr. Rojo testified that he had not been to Defendant's house in December 1996 and that his statement made at the time of his arrest to border patrol agents that he had been to Defendant's house in December 1996 was incorrect.  Nevertheless, because we do not think that this testimony would have had any serious impact on the fairness, integrity, or public reputation of the proceedings, we do not consider it in our analysis of the propriety of other Rule 404(b) evidence.

public reputation of judicial proceedings. See Johnson, 520 U.S. at 467.

Federal Rule of Evidence 404(b) prohibits the admission of "[e]vidence of other crimes, wrongs or acts . . . to prove the character of the person in order to show action in conformity therewith." However, such evidence may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). To determine if the admission of Rule 404(b) evidence was proper, we apply a four-part test. See United States v. Hill, 60 F.3d 672, 676 (10th Cir.), cert. denied, 516 U.S. 970 (1995). We examine whether (1) the evidence was offered for a proper purpose under Rule 404(b); (2) the evidence was relevant under Rule 401; (3) the probative value of the evidence was not substantially outweighed by its potential for unfair prejudice under Rule 403; and (4) the district court gave the jury proper limiting instructions upon request. See id. (citing Huddleston v. United States, 485 U.S. 681, 691-92 (1988)).

In discussing the jury instructions in this case, the district court stated that the testimony at issue was admissible for purposes of establishing knowledge, intent, or absence of mistake or accident. We agree with this assessment. Mr. Rojo's testimony that he had visited Defendant's house previously and that Defendant had himself taken illegal immigrants in his car to Deming was relevant and admissible to show Defendant's intent, knowledge, plan, and preparation with

-15-

respect to the charged conspiracy and to reveal that Mr. Rojo knew Defendant. Likewise, the agent's testimony about arresting illegal immigrants at Defendant's house in September 1996 was offered and relevant to show intent and knowledge that the aims of the conspiracy were illegal. Notably, the events to which these witnesses testified occurred during the four months preceding the dates of the conspiracy charged in the indictment. We think the evidence of prior acts is sufficiently close in time to the crime charged. Cf. United States v. Temple, 862 F.2d 821, 823-24 (10th Cir. 1988) (holding that in charged conspiracy spanning from February 9 to March 1, 1987, substantially similar incident in 1983 was not too remote to be admissible under Rule 404(b), but two incidents nearer in time should have been excluded because they were prejudicial and too tenuously related to the conspiracy).

Additionally, we do not believe that the impact of this testimony was unfairly prejudicial. Although the district court did not analyze the evidence under Rule 403 because it was not presented with the opportunity to do so, the effect of the testimony in question is not so prejudicial as to require reversal. Moreover, any possible prejudicial impact of this testimony is diminished in light of Defendant's own testimony admitting that he allowed illegal immigrants to come into his home on prior occasions, his testimony that he knew Mr. Rojo, and Mr. Rojo's in-court identification of Defendant.

In the final analysis, the record indicates that, although the trial judge and counsel for both parties referred to this Rule 404(b) evidence in their discussions on the jury instructions, Defendant did not request an instruction limiting the uses of this evidence. Thus, the court did not err in failing to give such an instruction. See Fed. R. Evid. 105; Huddleston, 485 U.S. at 691-92 (stating that a trial court shall give an instruction limiting the use of Rule 404(b) evidence upon the defendant's request); United States v. Herndon, 982 F.2d 1411, 1416 (10th Cir. 1992) (same). Our review of these factors leads us to conclude that the admission of this evidence did not constitute plain error.

V.

Finally, Defendant appeals the district court's denial of his motion for judgment of acquittal, arguing that the evidence was insufficient to support the jury's conviction of him for conspiracy and the four underlying substantive charges. To support his claim, Defendant states that "the record does not contain sufficient []or ample evidence from which the jury could conclude" that Defendant was guilty of the five crimes charged in the indictment. Appellant's Br. at 39. In making this argument, Defendant faces a high hurdle: In reviewing the sufficiency of the evidence to support a jury verdict, we review the record de novo and ask only whether, viewing the evidence and the reasonable inferences to

be drawn therefrom in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt. See United States v. Janusz, 135 F.3d 1319, 1323 (10th Cir. 1998); United States v. Voss, 82 F.3d 1521, 1524-25 (10th Cir.), cert. denied, __ U.S. __ , 117 S. Ct. 226 (1996).

Viewed in the light most favorable to the government, the evidence and the reasonable inferences therefrom–including the testimony of the border patrol agents, Mr. Rojo, and Defendant–show that Defendant (1) knew of and agreed to the plan to smuggle illegal immigrants into the United States; (2) knew that it was illegal to bring in, transport, harbor, or help immigrants unlawfully entering the United States; (3) willingly participated in the scheme and furthered the charged conspiracy by supplying his truck to Mr. Rojo to transport the immigrants from the trail near his house to Deming, New Mexico, on January 25, 1997; (4) was or would be paid by Mr. Vargas for his role in the conspiracy; and (5) knew and acted interdependently with at least three of the alleged coconspirators, namely Mr. Vargas, Mr. Rojo, and Mr. Miranda. Consequently, we conclude that a reasonable jury could find beyond a reasonable doubt that Defendant was guilty of the crimes for which he was charged and convicted. The district court did not err in denying the motion for judgment of acquittal.

Defendant's convictions are **AFFIRMED**.

Entered for the Court

Monroe G. McKay
Circuit Judge